ISLAND LAKE ARBORS CONDOMINIUM ASSOCIATION v
MEISNER & ASSOCIATES, P.C.

Docket No. 307353. Submitted June 11, 2013, at Lansing. Decided
June 18, 2013, at 9:15 a.m.

Island Lake Arbors Condominium Association filed a declaratory
judgment action against Meisner & Associates, P.C., in the Oak-
land Circuit Court, seeking a declaration that it owed Meisner no
additional legal fees. Meisner had provided legal services for Island
Lake against the developer of its condominium development
before Island Lake terminated the contract and retained new
counsel who later settled the original action pursuant to a confi-
dential agreement. The parties' written retainer agreement re-
quired Island Lake to pay Meisner a reduced hourly fee plus a 12
percent contingency fee calculated on the basis of the cash value of
any judgment or settlement reached with the opposing party
against whom Island Lake had filed the original action. Island
Lake paid Meisner all fees owed under the contract's hourly and
termination provisions before terminating Meisner's services. The
circuit court, Martha D. Anderson, J., denied the parties' opposing
motions for summary disposition, concluding that because the
parties' retainer agreement was ambiguous concerning Island
Lake's liability for additional attorney fees, a jury would have to
determine the fee issue; the circuit court refused to unseal the
underlying action's settlement terms until that contract issue was
resolved by a jury. Meisner filed an application for leave to appeal,
which the Court of Appeals granted. Unpublished order of the
Court of Appeals, entered August 10, 2012 (Docket No. 307353).

The Court of Appeals *held*:

1. A retainer agreement is interpreted according to its plain
and ordinary meaning and a contract is ambiguous only if its terms
are unclear or reasonably susceptible to more than one meaning.
In this case, the circuit court erred by concluding that the contract
was ambiguous and by denying Meisner summary disposition.
Meisner agreed to work at a reduced hourly rate in exchange for a
12 percent contingency fee if the case was successfully concluded
and the contract clearly provided that Meisner would earn that
contingency fee even if discharged before the case concluded.

2. When an attorney's employment is terminated before fully completing the contracted-for services, he is entitled to compensation for the reasonable value of his services on the basis of quantum meruit—which compensates an attorney for completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney—and not on the basis of the hourly or contingent-fee contract. The quantum meruit award is capped at the maximum amount of attorney fees provided in the contingency-fee agreement. To determine the fee owed to an attorney under a contingency-fee agreement in such a situation, the court must determine: (1) the cash value of the settlement according to the method set forth in the parties' contract and (2) the percentage of work performed to reach the settlement by both the original attorney whose employment was terminated and the successor counsel. The attorney is then entitled to recover the contracted-for contingency fee percentage of that portion of the recovery that is attributable to the share of work he completed. In this case, because it failed to fulfill its services under the terms of the contract, Meisner's fee could not be determined on the basis of the number of hours worked multiplied by a reasonable hourly fee because the retainer agreement specified that Meisner would receive a percentage of the recovery if the underlying action was successful. The fact finder must compare and contrast the contributions made by Meisner and successor counsel to determine Meisner's proportionate contribution toward completion of the underlying settlement; Meisner could not recover more than 12 percent of its contributory share of the work performed on the settlement.

Reversed and remanded for further proceedings consistent with the opinion.

ATTORNEY AND CLIENT — FEES — DISCHARGE BEFORE COMPLETION OF WORK —
    QUANTUM MERUIT — CONTINGENCY FEES.

When an attorney's employment is terminated before fully completing the contracted-for services, he is entitled to compensation for the reasonable value of his services on the basis of quantum meruit— which compensates an attorney for completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney—and not on the basis of the hourly or contingent-fee contract; a quantum meruit award is capped at the maximum amount of attorney fees provided in the contingency-fee agreement; the court must determine: (1) the cash value of the settlement according to the method set forth in the parties' contract and (2) the percentage of work performed by both the original attorney whose employment was terminated and the

successor counsel, to reach the settlement; an attorney may recover the contracted-for contingency fee percentage of that portion of the recovery that is attributable to the share of work he completed.

*Sullivan, Ward, Asher & Patton, P.C.* (by *Ronald S. Lederman, Christopher B. McMahon,* and *Jennifer R. Moran*), for Island Lake Arbors Condominium Association.

*The Meisner Law Group, P.C.* (by *Robert M. Meisner* and *Edward J. Lee*) for Meisner & Associates, P.C..

Before: OWENS, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM. Island Lake Arbors Condominium Association hired Meisner & Associates, P.C. to prosecute a civil action against Toll Brothers, Inc., the condominium developer and builder. The parties' written retainer agreement provided for a hybrid compensation arrangement. Island Lake agreed to pay Meisner a reduced hourly rate supplemented by a 12 percent contingency fee, which would be calculated based on the cash value of any judgment or settlement reached with Toll Brothers.

Meisner provided legal services for about 18 months before Island Lake terminated the contract and retained new counsel. When Meisner claimed an attorney's charging lien, Island Lake brought this declaratory judgment action, asserting that it owed Meisner no additional legal fees.

The circuit court determined that Meisner's retainer agreement was ambiguous concerning Island Lake's liability for additional attorney fees and that a jury would have to unravel the contract's contradictory terms. The litigation against Toll Brothers subsequently settled pursuant to a confidential agreement.

The circuit court refused to unseal the settlement terms until after a trial resolved the agreement's ambiguity.

This Court granted Meisner's application for leave to appeal, and we now reverse the circuit court. The contract unambiguously provides that Meisner is entitled to a contingent share of Island Lake's recovery. The amount of Meisner's fee must be decided by applying quantum meruit principles and cannot exceed 12 percent of the total recovery against Toll Brothers, the details of which must be revealed to Meisner.

### I. UNDERLYING FACTS AND PROCEEDINGS

Toll Brothers, Inc. developed and constructed Island Lake and a neighboring condominium property, Island Lake North Bay. In 2008, the Island Lake North Bay Association retained Meisner to sue Toll Brothers for damages arising from alleged construction defects. In 2009, Island Lake retained Meisner to file a similar suit.

Island Lake signed a lengthy retainer agreement drafted by Meisner. Paragraphs 2 and 3 provide for a mixed hourly and contingent fee:

> 2. HOURLY RATE FEES: *In addition to the contingent fee* stated below, the Association shall pay to the Law firm for services rendered with regard to the prosecution of its claims against the developer . . . the following hourly rate fees which are less than what the Law firm would otherwise seek for its services for such complex and unusual litigation, and which shall remain unchanged through the duration of the litigation:
>
> A. You will be charged for legal services rendered by our attorneys ranging from $225.00 to $285.00 per hour for out of Court time. . . .

* * *

3. <u>CONTINGENT FEE</u>: *In addition to the hourly rates* stated above, which shall not be modified during the course of this representation the Association shall pay the following contingency fee . . . to wit: twelve (12%) percent of all actual money, cash equivalents, and "in kind" property, services, values, savings, and/or benefits of any kind realized, paid to, and/or received by the Association . . . whether by way of settlement, case evaluation award, arbitration award, judgment . . . . [Emphasis added.]

Paragraph 10 of the agreement addresses Island Lake's right to terminate Meisner. It provides that even if new counsel enters the case, Island Lake "nonetheless" agrees to meet its fee obligation to Meisner:

10. <u>OTHER/ADDITIONAL LAWYERS</u>: The Association understands that while it may, as the client, elect or determine to supplement the Law firm with other lawyers or law firms, to replace the Law firm with other lawyers or law firms, and/or to discharge the Law firm at any time, *it nonetheless represents and agrees that it shall pay the Law firm all amounts i[t] has agreed to pay under this Agreement*, by which it has induced the Law firm to perform services for it. [Emphasis added.]

The retainer agreement also refers to and specifically incorporates a document called "Attachment A." Attachment A sets forth the "basis, facts, and representations by the Association which underlie and support" the retainer agreement. It continues in relevant part:

In light of the complex and anticipated time-consuming nature of the litigation, the Law firm has offered to represent the Association with regard to litigation on a purely hourly basis; but at a lower rate than those presently stated in the General Retainer Agreement.

\* \* \*

The Association understands that the reduction and "non-increase" in hourly fees for the litigation, *the perma-*

*nence of the said hourly fees for the litigation are intended to be intertwined with the contingent fee payable to the Law firm with regard to the litigation,* which contingent fee itself is substantially and materially lower than what the Law firm has stated it would otherwise seek with regard to the litigation.

\* \* \*

The Association's understanding that the Law firm's prior, present, and future work in organizing and planning for the litigation, in examining various issues, and in preparing and filing the Complaint, are crucial and extremely significant elements of the contemplated litigation and the direction thereof, *which entitle the Law firm to full compensation for its efforts in accordance with the provisions of the Litigation Fee Agreement* particularly in view of the Association's understanding and appreciation of:

\* \* \*

(h) The Law firm's higher hourly fees and high potential contingent fee(s) that might otherwise be sought or charged with regard to the litigation. [Emphasis added.]

Paragraph 13 of the retainer agreement, titled "Termination," creates the ambiguity perceived by the circuit court. It describes the mechanics of an attorney-client separation and necessitates payment of fees and costs attendant to "wrapping up our representation":

13. TERMINATION: If you desire to ask that we cease performing any services for you and/or you otherwise decide to terminate this firm, you must communicate same to us in writing so as to avoid any confusion concerning our representation of you and our instructions in connection therewith. However, it is understood that there will be costs incurred in wrapping up our representation of you should we be terminated or if the firm chooses to terminate our representation of you, which are chargeable billings to you depending upon the reason and source of our termina-

tion. This would include, but is not limited to, the preparation of a Substitution of Counsel and/or Motion hearing and Order of Withdrawal if we are terminated by you, and other costs and time incurred in regard to the transfer and/or closing of the files including collating and copying.

The circuit court construed this language as providing that upon termination Meisner was entitled only to "wind-up fees," and that this provision conflicted with the contract's other fee provisions.

Island Lake terminated Meisner's services in May 2010, after paying all fees due under the contract's hourly and "wrapping up" provisions. Meisner asserted a charging lien for the contingency portion of its fee against any recovery obtained from Toll Brothers. Island Lake then brought this declaratory action seeking a judgment that it owed Meisner no additional fees for legal services.

Island Lake moved for summary disposition of the fee issue pursuant to MCR 2.116(C)(10). Meisner countered with a summary disposition motion filed under MCR 2.116(I)(2), claiming that it, not Island Lake, was entitled to summary disposition. Island Lake contended that ¶ 13 of the contract specified the fees that it would owe on termination of Meisner's services, and did not mention a contingency fee. Meisner argued that the express contract terms called for payment of an hourly rate plus the contingency fee, and insisted that the fee aspects of the agreement survived its termination as counsel. Meisner also moved to amend its answer to assert a counterclaim for breach of contract.

The circuit court denied both parties' motions for summary disposition in a bench ruling, reasoning:

The court has reviewed the parties' briefs and listened to the arguments presented here this morning and finds that plaintiff's motion and defendant's counter motion

under (I)(2) must be denied. This is because any recovery rights defendant may have are ambiguous under the conflicting language found in paragraph ten, which provides that the association is bound by the terms of the agreement, beyond discharge of counsel, and paragraph 13, which states that upon termination, the costs involved would simply involve wind-up fees.

Where there is an ambiguity, ascertainment of the meaning of the contractual language presents a question of fact that must be decided by a jury, [Klapp] v United Insurance Group Agency, [Inc,] 468 Mich 459[; 663 NW2d 447 (2003).]

Accordingly, the motions are denied and this matter will proceed according to the schedule.

The circuit court subsequently granted Meisner's motion to file a counterclaim.

Meanwhile, Island Lake's new legal counsel confidentially settled the condominium association's claims against Toll Brothers. Island Lake refused to share the settlement details with Meisner, who then moved to compel discovery of the settlement agreement. The circuit court decided to bifurcate trial of the declaratory action and the counterclaim and denied Meisner's motion with the following explanation:

I believe that once the court makes a determination on the language . . . of the contract, the retainer agreement, then would be the time, if discovery is necessary, to do that and, of course . . . the decision of the court is to find that you are entitled to the contingency fee, then the court would have no problem with . . . allowing discovery and setting forth parameters, with respect to the settlement agreement that was reached in the other case.

But at this point in time, I think that the one thing that needs to be done is the issue of the intent of the agreement to be determined by this Court. So I'm denying your request.

The circuit court concluded that if it found in favor of Meisner on the declaratory action and counterclaim, it would permit discovery on the issue of damages. We granted Meisner's application for leave to appeal. *Island Lake Arbors Condo Ass'n v Meisner & Assocs, P.C.*, unpublished order of the Court of Appeals, entered August 10, 2012 (Docket No. 307353).

II. ANALYSIS

Meisner first contests the circuit court's ruling that the retainer agreement qualifies as ambiguous. According to Meisner, summary disposition should have been granted in its favor. This Court reviews de novo a circuit court's summary disposition ruling. *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

A contract is ambiguous only if its terms are unclear or are reasonably susceptible to more than one meaning. *Farm Bureau Mut Ins Co Mich v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999); *Smith v Smith*, 278 Mich App 198, 200; 748 NW2d 258 (2008). The plain language of the attorney-fee contract admits to only one interpretation: on Island Lake's recovery of damages against Toll Brothers, Meisner would earn a contingency fee even if discharged before the case concluded. Longstanding principles of Michigan law supply a general rule predicating the amount of Meisner's fee on the reasonable value of his services. We hold that Meisner may not recover more than the contract's 12 percent contingency fee.

A. THE CONTRACT AND ITS MEANING

We begin by considering whether the attorney-fee contract harbors ambiguity concerning Meisner's entitlement to fees if discharged by Island Lake. We interpret the parties' retainer agreement according to its plain and ordinary meaning. *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 611-612; 792 NW2d 344 (2010). A contract is clear and unambiguous if, "however inartfully worded or clumsily arranged," it "fairly admits of but one interpretation." *Farm Bureau Mut Ins Co*, 460 Mich at 566 (citation and quotation marks omitted). On the other hand, a contract is ambiguous if "its words may reasonably be understood in different ways." *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982). When contractual language is unambiguous reasonable people cannot differ concerning the application of disputed terms to certain material facts, and summary disposition should be awarded to the proper party. *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

The retainer agreement clearly requires Island Lake to pay Meisner an hourly rate in addition to a contingency fee. The parties stipulated that the hourly rate was "less than what the Law firm would otherwise seek . . . for such complex and unusual litigation." Attachment A reiterated this premise, stating that the reduced, nonmodifiable hourly fee was "intended to be intertwined with the contingent fee payable to the Law firm with regard to the litigation, which contingent fee itself is substantially and materially lower than what the Law firm has stated it would otherwise seek[.]" On its face, this language supports that Meisner agreed to work at a reduced hourly rate in exchange for a promise that it would share the recovery when (and if) the case

successfully concluded. This arrangement offers a reasonable alternative to a substantial retainer coupled with an hourly rate, and places an economic risk on the attorney. Moreover, "The measure of the compensation of members of the bar is left to the express or implied agreement of the parties subject to the regulation of the supreme court." MCL 600.919(1). Island Lake has raised no ethical challenge to this type of hybrid fee arrangement, and we discern none.

In ¶ 10, the contract acknowledges a legal truism: Island Lake may "discharge" Meisner at any time.[1] "Nonetheless," the agreement continues, Island Lake "represents and agrees that it shall pay the Law firm all amounts i[t] has agreed to pay under this Agreement, by which it has induced the Law firm to perform services for it." By asserting that the discounted hourly rate served as the carrot for the firm's deferred contingency fee payment, the contract unambiguously required Island Lake to pay a contingency fee regardless of the hourly charges. And by endorsing Attachment A, Island Lake affirmed Meisner's characterization of the dual fee structure as "full compensation" for the work to be performed. Read together, these provisions demonstrate the parties' intent that Meisner's complete compensation would consist of both an hourly rate plus 12 percent of any recovery.

---

[1] "[A] client has an absolute right to discharge an attorney[.]" *Reynolds v Polen*, 222 Mich App 20, 25; 564 NW2d 467 (1997). A client's right to discharge counsel is an implied term of an attorney-client contract. MRPC 1.16(a)(3). Island Lake's contention that ¶ 10 is invalid because it "restricts the client's right to discharge its counsel" is partially correct. We discuss this question later in this opinion. Notwithstanding ¶ 10's enforceability, its language creates no ambiguity. Rather, ¶ 10 clearly reflects the parties' intent that Meisner would have a contingency interest in the outcome whether or not he represented Island Lake when the case concluded.

We turn now to the controverted paragraph, which contains three sentences concerning "termination." The first sentence posits that if Island Lake wishes to terminate Meisner it must do so in writing. The second sentence states, "However, it is understood that there will be costs incurred in wrapping up our representation of you should we be terminated or if the firm chooses to terminate our representation of you, which are chargeable billings to you depending upon the reason and source of termination." We first observe that this sentence uses the phrase "costs incurred in wrapping up our representation of you." The third sentence contains examples of such "costs," including "the preparation of a Substitution of Counsel and/or Motion hearing and Order of Withdrawal if we are terminated by you, and other costs and time incurred in regard to the transfer and/or closing of the files including collating and copying."

We find nothing in this paragraph suggesting that Meisner agreed to forfeit the right to a contingency fee if its services were terminated. Rather, the second sentence describes the potential charges that may be incurred as part of the termination process, and the third sentence augments and clarifies that the "costs" relate solely to "wind-up" expenditures. Construed in the context of the entire fee agreement, this paragraph lends itself to only one reasonable interpretation: termination of Meisner's employment would occasion *additional* fees. Nothing in the paragraph supports that the additional fees would thereby nullify Meisner's contractual right to claim a fee contingent on Island Lake's recovery.[2] Accordingly, the circuit court erred by

---

[2] The Restatement provides:

> A contingent-fee contract is one providing for a fee the size or payment of which is conditioned on some measure of the client's

finding the contract ambiguous and by failing to grant summary disposition in favor of Meisner.

### B. QUANTUM MERUIT, APPLIED

Having determined that Meisner is entitled to a contingency fee, we consider the manner in which that fee should be calculated on remand. Meisner suggests that its fee should be determined according to its "contribution toward the eventual recovery in the underlying litigation[.]" Island Lake simply reasserts that ¶ 13 "effectively serves as a waiver" of Meisner's right to a quantum meruit recovery. We adopt the spirit of Meisner's argument, and hold that the quantum meruit approach described in *Morris v Detroit*, 189 Mich App 271; 472 NW2d 43 (1991), and *Reynolds v Polen*, 222 Mich App 20; 564 NW2d 467 (1997), provides the proper equitable framework for calculating Meisner's fee. Meisner's contract with Island Lake establishes a 12 percent contingency ceiling on the amount of the recovery ascribed to Meisner's efforts. In this case of first impression, we hold that the quantum meruit recovery of a discharged attorney is capped by the contingency-fee percentage set forth in the contract, applied to the amount of the recovery attributable to the attorney's work.

We begin by observing that Island Lake has not claimed that it terminated Meisner's employment on account of misconduct. Hence, no basis exists to deviate

---

success. Examples include a contract that a lawyer will receive one-third of a client's recovery and a contract that the lawyer will be paid by the hour but receive a bonus should a stated favorable result occur. [1 Restatement Law Governing Lawyers, 3d, § 35, comment a, p 257.]

Meisner's fee qualifies as contingent despite that it incorporated a noncontingent aspect.

from the rule set forth in *Reynolds* endorsing a quantum meruit approach. This Court has explained, "Where an attorney's employment is prematurely terminated before completing services contracted for under a contingency fee agreement, the attorney is entitled to compensation for the reasonable value of his services on the basis of quantum meruit, and not on the basis of the contract . . . ." *Plunkett & Cooney, PC v Capitol Bancorp LTD*, 212 Mich App 325, 329-330; 536 NW2d 886 (1995). In two other cases involving the vitality of contingency-fee contracts after an attorney's discharge, this Court has echoed that quantum meruit principles, rather than the contractual language, govern the attorney's entitlement to additional fees. *Reynolds*, 222 Mich App at 26; *Morris*, 189 Mich App at 278.

*Morris* and *Reynolds* examined the method for calculating an attorney's quantum meruit recovery in personal injury cases. The plaintiff in *Morris* originally retained Richard Durant as his counsel. Shortly before trial, the plaintiff discharged Durant and hired Frederick Jasmer on a contingency basis. Jasmer's attorney fee was capped by MCR 8.121(B) at 1/3 of the net recovery. The plaintiff prevailed at the trial but fired Jasmer while the case was on appeal. After a tortuous appellate course, the jury's verdict was affirmed. The plaintiff refused to compensate Jasmer or Durant, insisting that he intended to pay only his third lawyer. *Morris*, 189 Mich App at 275.

The trial court had found that Jasmer's efforts constituted "a significant factor in achieving the jury verdict in plaintiff's favor," completing 99.44 percent of the work required of him under the contingency-fee agreement and awarded Jasmer the entirety of the 1/3 fee. *Id.* at 275-277. The plaintiff appealed, arguing that given his obligation to compensate his newest lawyer,

the trial court's ruling awarded a fee in excess of the ⅓ recovery permitted by MCR 8.121. *Id.* at 277.

This Court held that while "the contingency fee agreement no longer operated to determine Jasmer's fee," Jasmer was nevertheless "entitled to compensation for the reasonable value of his services on the basis of quantum meruit[.]" *Id.* at 278. However, the trial court had abused its discretion by awarding Jasmer the entire contingent fee, because doing so "provided Jasmer with a benefit greater than that he had bargained for under the contingency fee agreement and greater than that which he was found to have earned." *Id.* at 279. This Court declared that based on the trial court's factual findings, Jasmer should have been awarded 99-44/100 percent of the ⅓ contingency fee. *Id.* at 280.

*Reynolds* reinforces the *Morris* approach to quantum meruit, which "compensates an attorney for completed work on the basis of evaluating as closely as possible the actual deal struck between the client and the attorney[.]" *Reynolds*, 222 Mich App at 30. In *Reynolds*, this Court located the discharged attorney's right to recover an attorney fee within the doctrine of quantum meruit rather than the contract itself: "[A]n attorney on a contingent fee arrangement who is wrongfully discharged, or who rightfully withdraws, is entitled to compensation for the reasonable value of his services based upon *quantum meruit,* and not the contingent fee contract." *Id.* at 24 (quotation marks and citation omitted). *Reynolds*, like *Morris*, was a personal injury case in which the attorney fee was governed by MCR 8.121 and thereby capped at ⅓ of the award.

Here, we consider a non-personal injury case involving an hourly fee blended with a contingent fee. Informed by *Morris* and *Reynolds*, we conclude that the contract alone does not dictate Meisner's recovery, as

Meisner failed to complete the work. Paying Meisner a full 12 percent contingency fee for partial completion of the legal work would overcompensate Meisner, allowing it to realize the full value of the contingency despite that it failed to fulfill its assigned task. *Morris* illuminates the impropriety of awarding the entire 12 percent; in *Morris*, a contribution percentage difference of only 56/100 percent required a quantum meruit award of less than the contracted fee.

Quantum meruit is an equitable doctrine that prevents a client's unjust enrichment while compensating an attorney for only those benefits actually generated by the attorney's work. Nevertheless, the contract may bear relevance to the computation of a lawyer's value to a case by defining the parties' expectations of that value. *Plunkett*, 212 Mich App at 330-331. In our view, limiting the discharged attorney's contingency fee to the percentage of the recovery called for in the retainer agreement preserves the client's freedom to substitute counsel without suffering an economic penalty while concomitantly honoring the parties' agreement to set an uppermost limit for the lawyer's value. The Florida Supreme Court reached the same conclusion in *Rosenberg v Levin*, 409 So2d 1016 (Fla, 1982). *Rosenberg* succinctly depicts the tension between the lawyer's interest and the client's as follows:

> There are two conflicting interests involved in the determination of the issue presented in this type of attorney-client dispute. The first is the need of the client to have confidence in the integrity and ability of his attorney and, therefore, the need for the client to have the ability to discharge his attorney when he loses that necessary confidence in the attorney. The second is the attorney's right to adequate compensation for work performed. [*Id.* at 1019.]

Restricting the wrongfully discharged attorney to a quantum meruit recovery capped at the maximum amount of attorney fees provided in the contingency-fee agreement appropriately elevates the client's interest in counsel of choice over the economic interests of the lawyer:

> The attorney-client relationship is one of special trust and confidence. The client must rely entirely on the good faith efforts of the attorney in representing his interests. This reliance requires that the client have complete confidence in the integrity and ability of the attorney and that absolute fairness and candor characterize all dealings between them. These considerations dictate that clients be given greater freedom to change legal representatives than might be tolerated in other employment relationships. We approve the philosophy that there is an overriding need to allow clients freedom to substitute attorneys without economic penalty as a means of accomplishing the broad objective of fostering public confidence in the legal profession. Failure to limit quantum meruit recovery defeats the policy against penalizing the client for exercising his right to discharge. However, attorneys should not be penalized either and should have the opportunity to recover for services performed. [*Id.* at 1021.]

Other jurisdictions have similarly emphasized that a contingency fee "cap" protects the client's absolute right to discharge his or her attorney. In *Plaza Shoe Store, Inc v Hermel, Inc*, 636 SW2d 53, 59 (Mo, 1982), the Missouri Supreme Court stated:

> To allow the attorney unlimited recovery under quantum meruit loses sight of the rationale of the modern rule favoring a client's freedom to discharge his attorney without unreasonable burden.

> The better rule, undoubtedly, would be to use the contract price as an upper limit or ceiling on the amount the discharged attorney could recover.

This approach comports with Michigan case law in personal injury cases, which prohibits recovery exceeding the public policy limit stated in MCR 8.121. Logically, even in non-personal injury cases, a fee limitation flowing directly from the contract itself respects both the parties' freedom of contract and the client's ability to change counsel. Accordingly, Meisner's quantum meruit recovery must be capped consistent with the maximum percentage he would have received under the contract: 12 percent.[3]

On remand, the fact finder must determine how much money Meisner is owed. The *Reynolds* Court instructed, "[Q]uantum meruit is generally determined by simply multiplying the number of hours worked by a reasonable hourly fee." *Reynolds*, 222 Mich App at 28. However, the *Reynolds* Court then specifically referred to the portions of *Morris* and *Plunkett* directing that the contractual terms must also govern reasonable compensation for services rendered. In this case, as in *Morris*, those terms included a contingency arrangement. Thus, we emphasize that it would be inappropriate to calculate Meisner's quantum meruit recovery on the basis of the number of hours worked multiplied by a reasonable hourly fee. In their contract, the parties deliberately spurned an arrangement based solely on an hourly fee, and instead agreed that if it completed the work, Meisner would share a percentage of the recovery. Since Meisner's hourly fees have been paid, the

---

[3] Notably, subsequent counsel's fee agreement in this case set forth strictly an hourly fee. We leave for another day an analysis of the competing interests when both old and new counsel have entered into contingency agreements.

remaining fact to be determined is the portion of the ultimate recovery attributable to Meisner's contribution.

After the cash value of the settlement has been determined according to the method set forth in Meisner's contract with Island Lakes, the fact finder must consider and compare the contributions to that recovery made by both Meisner and successor counsel. Once that determination has been made, Meisner is entitled to 12 percent of the recovery attributable to Meisner. This method comports with the meaning of quantum meruit: " 'as much as deserved.' " *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 359; 657 NW2d 759 (2002), quoting Black's Law Dictionary (6th ed), p 1243. It also compensates Meisner according to the "actual deal struck between the client and the attorney[.]" *Reynolds* 222 Mich App at 30. The bargained-for-value percentage memorialized in the contract governs Meisner's recovery, which flows from Meisner's contribution to the outcome.

### C. THE SETTLEMENT AGREEMENT

Our decision renders highly relevant the cash value of the settlement between Island Lakes and Toll Brothers. The amount of money at issue in the litigation and the results ultimately achieved are factors which should be considered when determining whether Meisner is entitled to additional attorney fees. While Island Lake and Toll Brothers have agreed to keep the terms of their settlement confidential, we have been presented with no information suggesting that the settlement terms are subject to any privilege from disclosure, or were officially sealed by the circuit court. See MCR 8.119(I). On remand, the circuit court may consider whether to release the information to Meisner subject to a protec-

tive order pursuant to MCR 2.302(C). The party seeking protection, in this case Island Lake, bears the burden of demonstrating good cause for the order to prevent "annoyance, embarrassment, oppression, or undue burden or expense . . . ." *Id.*

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Meisner may tax its costs pursuant to MCR 7.219.

OWENS, P.J., and GLEICHER and STEPHENS, JJ., concurred.