# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF RONALD LOUIS KALISEK SR., by
SUSAN KALISEK, Personal Representative,

      Plaintiff-Appellee,

v

BASSEL B. DURFEE,

      Defendant,

and

CHRISTOPHER P. LEGGHIO,

      Appellant.

FOR PUBLICATION
November 28, 2017
9:10 a.m.

No. 333943
Shiawassee Circuit Court
LC No. 14-006528-NI

Before: O'CONNELL, P.J., and MURPHY and K. F. KELLY, JJ.

MURPHY, J.

Appellant Christopher P. Legghio, the attorney who represented plaintiff, the Estate of Ronald Louis Kalisek Sr., pursuant to a retainer agreement for purposes of pursuing this wrongful-death action, sought approval by the trial court of a $10,000 distribution to Legghio from a $110,000 settlement, as allegedly necessary to cover his costs associated with prosecuting the litigation. The trial court, generally applying the law concerning taxable costs awardable to a prevailing party, awarded Legghio only $469. We hold that the trial court's ruling reflected a misunderstanding of the law, confusing taxable costs recoverable by a prevailing party in a lawsuit with the litigation costs recoverable by an attorney from his or her client under contract law. Accordingly, we reverse and remand for further proceedings.

In May 2014, the defendant, who was over 90 years of age at the time and legally blind, was operating a vehicle when he struck Ronald Kalisek as he was mowing his front yard. Mr. Kalisek died two days later as a result of the injuries sustained in the accident. Susan Kalisek, Mr. Kalisek's widow, was named personal representative of her husband's estate. Pursuant to a contract for legal services (hereafter "fee agreement"), she retained Legghio's law firm in June 2014 to commence a wrongful-death action on behalf of the estate against defendant. The fee agreement provided in relevant part:

-1-

The Client agrees to . . . pay to Attorneys for services rendered a sum equal to 25% of any amount received, recovered or obtained on behalf of the [C]lient after reimbursement of amounts advanced by the Attorneys to pay expenses of case preparation and litigation.

The Client agrees to pay costs for case preparation and litigation, such as court filing fees, court reporters, private investigators, medical reports and expert witnesses. When the Attorneys advance payment of such costs, an itemized statement shall be provided the Client at the time of settlement.

Following extensive litigation, the parties reached a settlement in the wrongful-death action in the amount of $110,000, which was formally approved by the trial court. The estate then filed a motion for authority to distribute the settlement proceeds, seeking, in pertinent part, the distribution of $25,000 in attorney fees and $10,000 in litigation costs to Legghio, as provided for by the fee agreement.[1] Legghio did not attach a bill of costs or any other type of documentation to support the request for $10,000 in litigation costs. At the hearing on the motion, the trial court noted that it had been concerned about the amount of costs being requested, so it had, prior to the hearing, requested and obtained a breakdown of the costs from Legghio's office. The trial court opined that some of the costs were unreasonable and even offensive. The court stated that it was prepared to immediately order the distribution of $3,235 in costs to Legghio or, if that was not acceptable to Legghio, to set the matter for an evidentiary hearing, with $10,000 of the settlement to be placed in escrow. Legghio chose the latter option, the funds were escrowed by order, and an evidentiary hearing was scheduled.

Prior to the evidentiary hearing, Legghio filed a memorandum in support of his request for costs associated with the wrongful-death litigation, attaching a mountain of invoices, statements, and other supporting documentation. At the evidentiary hearing, Legghio presented testimony from his law firm's bookkeeper, a licensed professional investigator who served process for Legghio relative to the litigation, and another process server employed in the case. Through these witnesses or otherwise, the exhibits that Legghio had attached to his memorandum were admitted into evidence. At the conclusion of the proofs, the trial court first noted that Legghio had not submitted a formal bill of costs that met the requirements of MCR 2.625(G), which court rule generally pertains to the taxation of costs. We note that MCR 2.625(A)(1) provides that "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." This court rule, therefore, has no application to the issue presented to the trial court, as Legghio was not seeking taxable costs awardable to a prevailing party, but rather litigation costs that his client was obligated to pay under the fee agreement for purposes of reimbursement.

The trial court next made the following observation, "And I'll say on the outset, this court does not claim that Mr. Legghio's bills are not authentic – I'm not making that claim at all; I do

---

[1] Legghio indicated that actual litigation costs exceeded $15,000, but he "agree[d] to reduce his costs to $10,000."

not believe that the bills are anything but what Mr. Legghio says that they are." The trial court proceeded to address the particular costs as itemized by Legghio. The trial court rejected a large number of requested costs on the basis that there was no statutory provision in the Revised Judicature Act (RJA), MCL 600.101 *et seq.*, or court rule allowing for or authorizing the cost, or on the basis that Legghio failed to identify and cite a supporting court rule or RJA provision. The trial court rejected other requested costs on the ground that, while there might be an RJA provision generally authorizing the type of fee or cost, there was a lack of compliance with components of the statutory provision or the requested cost fell outside the parameters of the provision. At times, the trial court broadly stated that Legghio failed to explain or support a particular cost, and it is difficult for us to discern whether the court meant that Legghio simply did not cite a statutory provision or court rule relative to the authorization of the cost, or whether the court meant that Legghio failed to provide evidentiary support showing that the cost was actually incurred or failed to explain the factual basis for the cost. During its ruling from the bench, the trial court repeatedly indicated that it was applying the law regarding taxable costs, citing opinions addressing taxable costs recoverable by a prevailing party. Ultimately, the trial court awarded Legghio only $469, which consisted of various filing fees. Orders were subsequently entered reflecting the trial court's ruling and directing the distribution of the $10,000 in escrowed funds, with $9,531 going to Mrs. Kalisek and $469 to Legghio, who now appeals.

In *Reed v Breton*, 279 Mich App 239, 241-242; 756 NW2d 89 (2008), this Court explained:

> A circuit court's decision concerning the distribution of settlement proceeds in a wrongful-death matter is reviewed for clear error. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. Interpretation of a court rule, like a matter of statutory interpretation, is a question of law that this Court reviews de novo. The rules governing the construction of statutes apply with equal force to the interpretation of court rules. [Citations, quotation marks, and alteration brackets omitted.]

Under the wrongful-death act, MCL 600.2922, a trial court is required to conduct a hearing and approve the distribution of proceeds from any settlement. *Id.* at 242; see also MCL 700.3924. "MCR 8.121 addresses allowable attorney fees in personal-injury and wrongful-death actions." *Reed*, 279 Mich App at 242. And MCR 8.121, which also touches on litigation costs, provides, in pertinent part, as follows:

> (A) In any claim or action for personal injury or wrongful death based upon the alleged conduct of another . . ., in which an attorney enters into an agreement, expressed or implied, whereby the attorney's compensation is dependent or contingent in whole or in part upon successful prosecution or settlement or upon the amount of recovery, the receipt, retention, or sharing by such attorney, pursuant to agreement or otherwise, of compensation which is equal to or less than the fee stated in subrule (B) is deemed to be fair and reasonable. The receipt, retention, or sharing of compensation which is in excess

of such a fee shall be deemed to be the charging of a "clearly excessive fee" in violation of MRPC 1.5(a) . . . .

(B) The maximum allowable fee for the claims and actions referred to in subrule (A) is one-third of the amount recovered.

(C) (1) *The amount referred to in subrule (B) shall be computed on the net sum recovered after deducting from the amount recovered all disbursements properly chargeable to the enforcement of the claim or prosecution of the action.* In computing the fee, the costs as taxed and any interest included in or upon the amount of a judgment shall be deemed part of the amount recovered. [Emphasis added.]

The emphasized language in MCR 8.121(C)(1) reflects that, as part of the computation of the appropriate attorney fee, any litigation costs must be deducted from the net recovery. Under the formula set forth in MCR 8.121, and assuming that Legghio was entitled to $10,000 in costs, the $10,000 would be deducted from the $110,000 settlement, leaving $100,000, which would be subject to the valid 25 percent attorney-fee provision in the fee agreement, or $25,000. The trial court did approve a $25,000 distribution to Legghio for his services in representing the estate.

As indicated in MRPC 1.8, litigation costs must ultimately be borne by the client, unless the client is indigent. Specifically, MRPC 1.8 provides in relevant part:

(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that

(1) a lawyer may advance court costs and expenses of litigation, *the repayment of which shall ultimately be the responsibility of the client*; and

(2) a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client. [Emphasis added.]

A fee or retainer agreement is a contract and is subject to the law of contracts. *Island Lake Arbors Condo Ass'n v Meisner & Assoc, PC*, 301 Mich App 384, 392-393; 837 NW2d 439 (2013) ("We interpret the parties' retainer agreement according to its plain and ordinary meaning."). Therefore, the recovery of costs advanced by an attorney to a client under a fee agreement is governed by contract law. And a trial court's authorization of the distribution of proceeds from a successful wrongful-death suit in regard to costs incurred by the plaintiff's counsel must likewise be guided by contract law. Again, MCR 2.625 pertains to taxable costs awardable to a prevailing party, as paid by the losing party, and not to the circumstances presented in this case. Accordingly, the trial court erred by relying on MCR 2.625 and the provisions in the RJA in reviewing the costs claimed by Legghio and by demanding that Legghio cite supporting court rules and RJA provisions. The authority for Legghio's request for litigation costs is the contract, i.e., the fee agreement, as the estate promised to reimburse Legghio for costs advanced during the litigation. Of course, standard contract defenses can serve as a basis to reject requested costs. For example, if there was a lack of evidentiary support to show that a particular cost being sought by Legghio was actually incurred, the court could legitimately decline to approve the distribution of settlement proceeds to cover the claimed cost, as the cost

-4-

would not be "properly chargeable to the enforcement of the claim or prosecution of the action," MCR 8.121(C)(1).[2]

We conclude that the proper course of action is to remand the case to the trial court for review of the costs requested by Legghio under the law of contracts and not the law that governs taxable costs awardable to a prevailing party.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. We decline to award taxable costs under MCR 7.219.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly

---

[2] As another example but in the context of an attorney fee, a court would be justified in refusing to authorize the distribution of a contingency fee to an attorney that amounted to 50 percent of a judgment, given that such a fee would be a violation of law and public policy as reflected in MCR 8.121(B) and MRPC 1.5. See *Rory v Continental Ins Co*, 473 Mich 457, 470; 703 NW2d 23 (2005) (a contractual provision is not enforceable if it violates law or public policy).