*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NAGESH PALAKURTHI,

Plaintiff-Appellant,

v

UPPER LONG LAKE ESTATES
CORPORATION,

Defendant-Appellee.

UNPUBLISHED
January 28, 2020

No. 346457
Oakland Circuit Court
LC No. 2017-159814-CH

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of defendant. Plaintiff contends on appeal that the trial court erred in determining that no genuine issues of material fact existed as to plaintiff's right to access a boat ramp owned by defendant, and as to whether defendant's denial of access to the ramp constituted a breach of contract or a private nuisance. We affirm.

Plaintiff owns a home in the Heron Bay Subdivision (HB) that fronts Upper Long Lake in Bloomfield Hills, Michigan. Plaintiff brought this suit claiming that defendant was unlawfully interfering with plaintiff's right to access a boat ramp "located on Lot 64 of the Upper Long Lake Estates No. 1 subdivision [(ULLE)]." According to plaintiff, HB and ULLE were developed by a common entity, Turtle Lake Development, LLC, which situated on Lot 64 of ULLE a boat ramp to, among other things, allow HB homeowners whose homes fronted Upper Long Lake to launch watercraft during boating season. This use of Lot 64 was memorialized in deed restrictions dated June 15, 2011. Plaintiff contended that, in recent years, representatives of defendant created an onerous "Launch License and Use Agreement" that violated plaintiff's contractual rights to freely access the boat ramp and constituted a private nuisance.

After plaintiff filed his complaint alleging breach of contract and private nuisance for his inability to access Lot 64, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10). Defendant contended that, pursuant to the deed restrictions to Lot 64 from which plaintiff's right to access Lot 64 was derived, all residents of HB eligible to use Lot

-1-

64 are required to sign an original 2002 agreement with ULLE (the Master Agreement), as well as an annual license agreement (the License Agreement) before they can actually access the boat ramp. Defendant contended that plaintiff had failed to sign the License Agreement, and thus had no contractual rights to be interfered with. The trial court agreed, and we affirm.

## I. BREACH OF CONTRACT

Plaintiff's primary argument on appeal is that, taken together, the deed restrictions pertaining to Lot 64, the Master Agreement, and the License Agreement suggest that plaintiff has the right to access Lot 64 in the same method and manner as ULLE residents, and in particular, that because ULLE residents are able to obtain individuals keys to access Lot 64, plaintiff should also be permitted to obtain a key. We disagree. Nothing in any of the documents suggests that plaintiff is to be afforded the same level of access to Lot 64 as ULLE residents, let alone that plaintiff is specifically entitled to a key.

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012), citing *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). In this case, defendant moved for summary disposition pursuant to MCR 2.116(C)(8) and (C)(10), however, the parties looked beyond the pleadings in arguing for and against the motion, and accordingly, this Court treats the motions as though they were made pursuant to MCR 2.116(C)(10) only. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate where "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). A (C)(10) motion considers documentary evidence and "tests the *factual* sufficiency of the complaint." *Dalley v Dykema Gossett*, 287 Mich App 296, 304 n 3; 788 NW2d 679 (2010), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In reviewing the motion, "this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (quotation marks and citation omitted). Lastly, "the proper interpretation of contracts and the legal effect of contractual provisions are questions of law [also] subject to review de novo." *Meemic Ins Co v Bischer*, 323 Mich App 153, 157; 915 NW2d 1 (2018).

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005), citing *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 47; 664 NW2d 776 (2003). This Court enforces unambiguous contracts as written. *Farm Bureau Mut Ins Co v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999), citing *Morley v Auto Club of Mich*, 458 Mich 459, 465; 581 NW2d 237 (1998). "[W]hen parties enter into multiple agreements relating to the same subject-matter, we must read those agreements together to determine the parties' intentions." *Wyandotte Electric Supply Co v Electrical Technology Sys, Inc*, 499 Mich 127, 148; 881 NW2d 95 (2016). "A contract is ambiguous only if its terms are unclear or are reasonably susceptible to more than one meaning." *Island Lake Arbors Condo Ass'n v Meisner & Assoc, PC*, 301 Mich App 384, 392; 837 NW2d 439 (2013) (citations omitted). "A party asserting a breach of contract must establish by a preponderance of

the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014), citing *Stevenson v Brotherhoods Mut Benefit*, 312 Mich 81, 90-91; 19 NW2d 494 (1945).

## A. DEED RESTRICTIONS

First, the deed restrictions pertaining to Lot 64 create only a very limited right for plaintiff to access Lot 64. The restrictions relied upon by plaintiff provide:

> Lot 64 shall be used solely for the purpose set forth in Subparagraph "p" hereof and also the purpose of providing access to Upper Long Lake for (1) the owners or owners of lots in Upper Long Lake Estates No. 1, (2) the immediate family of said owner or owners, (3) the domestic servants and invited guests of such owner or owners and the immediate family of such guests, (4) owners of lots in Upper Long Lake Estates, for purposes of launching watercraft, but only pursuant to the terms and conditions of a written directive made by Upper Long Lake Estates Corporation, which directive may only be issued upon approval of at least 3 Group C representatives on the corporation's Board of Directors, (5) owners of houses which front Upper Long Lake and are located in either [HB] or Turtle Lake Subdivision, for purposes of launching watercraft, but only pursuant to the terms and conditions of a written Agreement with Upper Long Lake Estates Corporation, and (6) those employed by the Lake Board for Upper Long Lake for purposes of weed harvesting and/or other management of the water quality for Upper Long Lake, but only pursuant to the terms and conditions of a written Agreement with Upper Long Lake Estates Corporation

Notably, and contrary to plaintiff's argument on appeal that it was intended that he have uniform access to Lot 64 alongside ULLE residents, the deed restrictions provide individuals such as plaintiff are to have access to Lot 64 "for purposes of launching watercraft, *but only pursuant to the terms and conditions of a written agreement with [defendant.]*" Nothing in the language suggests that plaintiff, as a resident of HB, was to have unfettered access to Lot 64, or that plaintiff's access was intended to be equal to the access provided to ULLE residents.

## B. THE MASTER AGREEMENT

The Master Agreement referenced in the deed restrictions, which has been unchanged since 2002, provided for the development of Lot 64 and provided, in relevant part:

> 3. <u>License Agreement</u>. ULLE shall grant, exclusively through Turtle Lake Development, to the owners of Heron Bay Subdivision Lots 3 through 18 (including Lots 11A and 11B) and Turtle Lake Development Condominium Units 60 through 67, which lots and units front upon Upper Long Lake (each, a "Grantee"), on an annual basis, a License and Use Agreement in the form attached hereto as <u>Exhibit E</u> for the sole purpose of annual launching and retrieving watercraft which shall be docked at the owner's lot or condominium for the boating season on Upper Long Lake (the "<u>License Agreement</u>"). No other

residents, employees, owners, or other parties of Heron Bay Subdivision or Turtle Lake Development shall be granted such a License Agreement. Turtle Lake Development shall exercise reasonable efforts to assist ULLE in preventing unauthorized access to Lot 64. Turtle Lake Development shall have sole and exclusive right and authority to approve Grantees, and shall be responsible for the obtaining the [sic] execution of the License Agreements and completion of watercraft registration forms (in the form attached as Exhibit F) by the approved Grantees. Turtle Lake Development (or its designee) shall, prior to each boating season, inform ULLE of the Grantees who have been approved by Turtle Lake Development and who desire to enter into a License Agreement for the upcoming boating season and shall collect and promptly pay over to ULLE any fees charged by ULLE in connection therewith.

* * *

ULLE shall provide, through Turtle Lake Development, each Grantee such License Agreements as may be necessary to allow the Grantee to launch from Lot 64 watercraft to be docked at their residence, provided that Lot 64 may not be used by a Grantee to launch watercraft if such launch would result in more than three (3) watercraft being docked at the Grantee's residence. All watercraft must be registered with the State of Michigan and insured (in an amount reasonably determined by each Grantee). Proof of registration and insurance must be provided to Turtle Lake Development or its designee by Grantee for each watercraft. ULLE shall not be required to enter into a License Agreement with any person who (i) repeatedly violates the rules and regulations for "Water Safety on Upper Long Lake," provided such rules and regulations are uniformly enforced by ULLE or homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1, (ii) creates a nuisance in the operation of his watercraft, as defined by applicable law and/or the Upper Long Lake Management Committee Board, (iii) repeatedly interferes with weed harvesting or lake management operations upon Lot 64, (iv) repeatedly violates the ULLE rules and regulations concerning launching of watercraft, provided such rules and regulations are uniformly enforced against homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1, or (v) materially or repeatedly violates the terms of the License Agreement or Agreements as renewed. Grantees shall be permitted use of the launch facilities at Lot 64 for the 2002 boating season during the time frames set forth in **Exhibit G** attached hereto and incorporated herein, plus one additional retrieval and launch as set forth in the License Agreement, and such comparable periods during each succeeding boating season to be calculated by ULLE upon not less than third (30) days' prior written notice to Turtle Lake Development and the Grantees. Notwithstanding anything to the contrary set forth in this Agreement, ULLE may reasonably determine the method pursuant to which the Grantees shall be provided access to Lot 64, provided that access is granted in the manner and at the times as contemplated by this Agreement and/or the License Agreement.

-4-

ULLE may charge each Grantee an initial, one-time registration fee in connection with the License Agreement, the amount of which registration fee shall be the same as the initiation fee charged by ULLE to residents of Upper Long Lake Estates Subdivision No. 1 with full privileges at Lot 64, and which is currently $500.00. The registration fee shall be personal to each Grantee, shall not be transferable and shall be independent of the number of watercraft or change of watercraft. In addition, ULLE may charge an annual maintenance and administration fee, which fee initially is set at $250.00. ULLE may impose reasonable increases to the maintenance and administration fee, but in no even shall such fee increase by more than seven percent (7.0%) per year on a cumulative annual basis. ULLE may further assess Grantees for (i) any and all reasonable attorney fees incurred by ULLE in defending any possible challenges to the use granted in the License Agreement and/or this Agreement by third parties other than homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdisivions No. 1, and (ii) lock and key replacement necessitated by the acts of any Grantee. The total amount assessed to the Grantees under (i) above shall not exceed fifty (50%) of the total reasonable attorney fees incurred by ULLE in defending any possible challenge to the use granted in the License Agreement by third parties other than homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Suvdivision No. 1 or 100% if brought by residents and/or lot/unit owners of Heron Bay Subdivision and/or Turtle Lake Development and their respective partners, members, shareholders, officers, directors, affiliates, successors and assigns.

\* \* \*

ULLE shall provide Grantees such License Agreements each and every year in which residents of Upper Long Lake Estates Subdivision No. 1 are granted access to Upper Long Lake through Lot 64, subject to the limitations set forth in this paragraph below. In the event that residents of Upper Long Lake Estates Subdivision No. 1 are no longer granted access to Upper Long Lake through Lot 64, but are granted access to Upper Long Lake through any other portion of Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1, then (a) for a period of fifteen (15) years from the date of this Agreement, the Grantees shall be provided License Agreements for access to Upper Long Lake in the same location and manner as residents of Upper Long Lake Estates Subdivision No. 1, and (b) after such 15 year period, ULLE shall nevertheless use all reasonable efforts to include the Grantees as permitted users of any access to Upper Long Lake (other than Lot 64) which ULLE obtains within Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1, unless ULLE would be prevented from doing so for reasons beyond its reasonable control.

Again, contrary to plaintiff's assertion, the Master Agreement explicitly limits plaintiff's access to Lot 64 in almost the exact manner as the 2017 License Agreement that plaintiff admittedly refused to sign on account of it being overly cumbersome. Thus, similar to the deed restrictions, the Master Agreement provides no support for plaintiff's contention that he should be granted

unfettered or equal access to Lot 64 as ULLE residents. In fact, the contract explicitly provides that "ULLE may reasonably determine the method pursuant to which the Grantees shall be provided access to Lot 64, provided that access is granted in the manner and at the times as contemplated by this Agreement and/or the License Agreement."

The majority of plaintiff's argument is premised on the final paragraph of the above text, in which the contract provides that, should ULLE residents no longer have access to Lot 64 and instead access the lake by some other means, for at least some period of time, grantees should also be provided lake access "in the same location and manner." Plaintiff would seem to suggest that this language implies an intent by the authors of the contract that plaintiff always have the same manner of access to Upper Long Lake as ULLE residents. This argument is without merit for a number of reasons. First, it requires an overly broad reading of a provision that, by its own terms, only applies when residents *no longer* have access to Upper Long Lake through Lot 64. That is, the provision relied upon by plaintiff does not speak to his level of access to Lot 64 because it explicitly does not apply when plaintiff has access to that lot. Moreover, other language in the contract plainly speaks to plaintiff's right to access Lot 64, and that language—as noted above—directly contradicts plaintiff's assertion that he should have equal access to Lot 64 as ULLE residents.

## C. THE LICENSE AGREEMENT

The last document which might support plaintiff's arguments on appeal is the annual license agreement, which, according to defendant's president, has also been unchanged since 2002. The License Agreement provides:

> 1. <u>Grant of License</u>. ULLE hereby grants to Grantee, a nonexclusive license for the use of ULLE's watercraft launch facilities located at the real property known as Lot 64, "Upper Long Lake Estates No. 1", as recorded in Liber 81, Pages 8 and 9 of Plats, Oakland County Records (the "<u>Launch Property</u>"), in addition to the right of access to and from the Launch Property in connection with such license, for the purpose of providing access to Upper Long Lake as set forth in certain deed restrictions recorded in Liber 15181, Page 257, Oakland County Records, as amended (the "<u>Deed Restrictions</u>") for
>
>> (i) the yearly launch and retrieval between March and November of each calendar year of Grantee's watercraft(s) to and from Upper Long Lake during the windows of opportunity as are provided by Grantor (pursuant to the Master Agreement (as defined below) upon not less than thirty (30) days' prior written notice to Grantee;
>>
>> (ii) plus one (1) additional uses of the launch for retrieval and launch of each watercraft for any non-recurring reason; and
>>
>> (iii) the temporary right to park Grantee's delivery vehicle and trailer upon the Launch Property in connection with such launches and retrievals, for a period not to exceed on hour, all subject to the terms and conditions of this Agreement.

Grantee must keep the key or other ingress/egress control measure, if any is provided directly to Grantee, under their direct or indirect control at all times. Such key or control measure must remain clearly identified with the Grantee's name and telephone number at all times. Only the Grantee or a company engaged by him may use the key or control measure and then only for the purpose of launching or retrieving the Grantee's own personal watercraft as set forth in this Agreement. Grantee may use the site for the minimum amount of time reasonably necessary to accomplish a launch or retrieval.

2.　　Term.　　The term of this Agreement shall be ONE YEAR, beginning March 1, 20__ and ending on the last day of February, 20__. This agreement may be revoked and/or not renewed at any time by ULLE for any of the following reasons:

* * *

5.　　Grantee repeatedly violates the rules and regulations for "Water Safety on Upper Long Lake", provided such rules and regulations are uniformly enforced by ULLE or homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1 against homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Subdivision No. 1;

6.　　Grantee repeatedly interferes with weed harvesting and lake management upon Lot 64;

7.　　Grantee repeatedly violates the ULLE rules and regulations concerning launching of watercrafts, provided such rules and regulations are uniformly enforced against homeowners in Upper Long Lake Estates Subdivision or Upper Long Lake Estates Subdivision No. 1; and

8.　　Grantee materially violates the terms and conditions of this Agreement.

3.　　Conditions of Launch.　　Grantee understands and agrees that Grantor does not guarantee the condition of the launch at any time. Grantee shall be responsible for inspecting the launch prior to use and determining its safety. Notwithstanding the foregoing, in the event the launch is unusable due to construction or safety issues, Grantee shall be permitted to launch and retrieve its watercraft(s) in the same manner provided by Grantor to the residents of Upper Long Lake Estates Subdivision No. 1.

* * *

7.      Miscellaneous.  Grantee shall comply with all applicable rules or regulations of ULLE pertaining to the Launch Property, so long as such rules or regulations are evenly applied to all users of the Launch Property. . . . This License Agreement and the associated provisions in the agreement between ULLE and Turtle Lake Development dated _____, 2002 (the "Master Agreement"), constitute the entire agreement between ULLE and Grantee.  There are no terms or obligations other than those contained in these referenced agreements.

Again, nothing in this agreement can be read to support plaintiff's argument that he should have unfettered or equal access to Lot 64.  The document explicitly limits plaintiff's access to Lot 64 *and* does so in a manner consistent with the deed restrictions and the Master Agreement.  The document further evidences that grantees such as plaintiff do not have any absolute contractual right to a key or other method of entry to Lot 64: "Grantee must keep the key or other ingress/egress control measure, *if any is provided directly to Grantee,* under their direct or indirect control at all times."

As with the Master Agreement, plaintiff relies upon provisions unrelated to his level of access to Lot 64 to suggest that he should have access equal to ULLE residents.  Plaintiff notes that a license agreement cannot be denied him for violating "Water Safety on Upper Long Lake" rules unless those rules are uniformly enforced, but fails to describe how these rules can be interpreted to speak to his level of access to the lot.  Plaintiff makes the same argument with respect to "ULLE rules and regulations concerning launching of watercrafts," but again, does not explain how those rules can or should be interpreted as affecting plaintiff's ability and right to access Lot 64.  We are inclined to agree with the trial court that rules concerning water safety and the launching of watercrafts are just that: they are rules about the method and manner in which Lot 64 may be used and not rules about how it may be accessed.

In summation, we see no support in the plain language of the controlling documents for plaintiff's argument that he is entitled to unfettered or equal access to Lot 64 as ULLE residents, particularly in light of plaintiff's admission that he refused to sign the 2017 License Agreement.  The deed restrictions, Master Agreement, and License Agreement all support a conclusion that plaintiff is entitled to limited access to Lot 64 for specific purposes in accordance with written terms by ULLE.  Given the plain language of the contracts, which directly contradict plaintiff's suggestion that he should be provided equal access to the lot as ULLE residents, the trial court did not err in determining that there were no genuine issues of material fact with respect to whether plaintiff's contractual rights had been violated.

## II.  PRIVATE NUISANCE

Plaintiff next contends that the trial court erred in dismissing plaintiff's nuisance claim because defendant's improper limitation on plaintiff's access to Lot 64 deprived him of the use and enjoyment of a central feature of his lakefront property.  We disagree.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992).

The elements of private nuisance are satisfied if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional or unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligence, reckless, or ultrahazardous conduct. [*Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 431-432; 770 NW2d 105 (2009).]

"To prevail in nuisance, a plaintiff must prove significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of property." *Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 490; 608 NW2d 531 (2000).

Plaintiff's nuisance claim is premised on the idea that his inability to access Lot 64 has resulted in the diminution of the value of his property. Plaintiff notes that "damages for a nuisance can be recovered for a diminution of the value of property," *Travis v Preson*, 249 Mich App 338, 351; 643 NW2d 235 (2002), however, plaintiff has failed to provide any evidence of any actual diminution of value in this case, see *Capitol Props*, 283 Mich App at 432. Moreover, although plaintiff's claim could fail on that ground alone, we also note that, given the relevant contractual provisions outlined above, it is not clear that defendant interfered whatsoever with any cognizable right owned by plaintiff. Plaintiff still has the ability to enjoy his property, and to the extent the use of Lot 64 is necessary for the enjoyment of his property, plaintiff need only abide by the terms and conditions described in the contractual agreements.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford