SOUDEN v SOUDEN

Docket No. 309606. Submitted December 11, 2013, at Detroit. Decided
      December 17, 2013, at 9:00 a.m.
      Gwenda J. Souden brought an action in the Oakland Circuit Court,
      Family Division, against Dean F. Souden seeking a judgment of
      divorce. The court, Linda S. Hallmark, J., granted the judgment. The
      judgment contained a provision stating that each party was respon-
      sible for their own attorney fees and costs and that each attorney
      retained a lien on his or her client's share of the marital assets to
      ensure payment of the attorney fees. The judgment further provided
      that if either party failed to pay his or her attorney, the attorney
      would be entitled to proceed by virtue of the judgment of divorce as a
      judgment creditor to collect the sums with such remedies as are
      available to a judgment creditor in Michigan. A. Lawrence Russell,
      the attorney who represented Gwenda Souden (hereafter plaintiff) in
      the divorce proceedings, thereafter filed a petition seeking the pay-
      ment of $26,291.47 allegedly owed as a result of his efforts. Following
      a hearing, the trial court granted Russell's request for attorney fees,
      although it ordered that a $2,500 credit claimed by plaintiff be
      reflected in the judgment. Plaintiff appealed.

          The Court of Appeals *held*:

          1. The trial court had the jurisdiction to enforce Russell's
      attorney's charging lien that was secured by the judgment of
      divorce. The jurisdiction of the trial court was established by the
      fact that it had jurisdiction over the divorce. The ability to enforce
      an attorney's charging lien is ancillary to a trial court's exercise of
      jurisdiction over the cases before it.

          2. Plaintiff received adequate due process protections.

          3. The trial court did not properly review Russell's claimed fees
      for reasonableness, did not address on the record any of plaintiff's
      contentions regarding the fees, and did not analyze the reasonable-
      ness of the "finance charge" charged by Russell. The trial court's
      order is vacated and the case is remanded to the trial court for an
      evidentiary hearing regarding the reasonableness of the claimed fees.

          4. The trial court, if Russell seeks payment of his "finances
      charge" on remand, should determine whether Russell's finance
      charge is in the nature of interest on a debt or a late fee.

5. To the extent that the order of the trial court can be interpreted as attaching a lien to the real property of plaintiff, such a lien would be invalid under the circumstances as they currently exist. Absent Russell following the proper procedures to collect on a judgment, his charging lien may not attach to plaintiff's real property.

Vacated and remanded.

1. ATTORNEY AND CLIENT — ATTORNEY'S LIENS — GENERAL LIENS — CHARGING LIENS.

There are two types of attorney's liens; a general, retaining, or possessory lien and a special or charging lien; a general, retaining, or possessory lien grants an attorney the right to retain possession of a client's property, including money and documents, until the fee for services is paid; a special or charging lien is an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit; a charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services.

2. ATTORNEY AND CLIENT — ATTORNEY'S LIENS — CHARGING LIENS.

A trial court's ability to enforce a charging lien of an attorney for a party in an action before the court is ancillary to the court's exercise of jurisdiction over the case involving the party.

3. ATTORNEY AND CLIENT — ATTORNEY FEES.

It is incumbent on a trial court to conduct a hearing to determine what services were actually rendered and the reasonableness of those services when requested attorney fees are contested; a trial court should endeavor to briefly discuss the eight factors listed in MRPC 1.5(a) in order to aid appellate review of its decision, but is not required to consider every factor in detail.

4. ATTORNEY AND CLIENT — ATTORNEY FEES — CONTRACTS.

An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered.

5. ATTORNEY AND CLIENT — ATTORNEY'S LIENS — CHARGING LIENS — REAL PROPERTY.

An attorney's charging lien may not be imposed on the real estate of the attorney's client, even if title to the real estate was established or recovered by the attorney's efforts, unless the parties have an express agreement providing for a lien, the attorney obtains a judgment for the fees and follows the proper procedure for

enforcing a judgment, or special equitable circumstances exist to warrant the imposition of a lien.

*Allan Falk, PC* (by *Allan Falk*), for Gwenda Souden.

Before: BOONSTRA, P.J., and DONOFRIO and BECKERING, JJ.

BOONSTRA, P.J. Plaintiff appeals as of right the order of the trial court granting the petition of attorney A. Lawrence Russell (Russell) for payment of attorney fees. We affirm the trial court's jurisdiction over this matter and reject plaintiff's due process claims; nonetheless, we vacate the trial court's order and remand for an evidentiary hearing on the reasonableness of Russell's claimed fees.

### I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a divorce following domestic relations arbitration. The divorce judgment entered after the arbitration was the subject of a prior appeal in this Court.[1] The issues involved in the arbitration and the entry of the judgment of divorce are for the most part not relevant to the current appeal.

Russell represented plaintiff in the divorce proceedings. The judgment of divorce entered by the trial court contained the following provision:

### ATTORNEY FEES

IT IS FURTHER ORDERED AND ADJUDGED that each party shall be responsible for their own attorney fees and costs. Each attorney, A. Lawrence Russell, [sic] & Associates P.C., and, [sic] John P. Williams, Esq., shall retain a lien on

---

[1] See *Souden v Souden*, unpublished opinion per curiam of the Court of Appeals, issued September 20, 2011 (Docket Nos. 297676, 297677, and 297678).

his/her client's share of the marital assets to insure payment of the attorney fees. Should either party fail to pay his/her attorney, the attorney shall be entitled to proceed by virtue of the Judgment of Divorce, as a Judgment Creditor, to collect said sums with such remedies as are available to a Judgment Creditor in the State of Michigan. Further, each attorney lien claimed and held is not dischargeable through bankruptcy.

In 2012, Russell filed a "Petition for Payment of Attorney Fees Pursuant to Attorney Fees Provision as Set Forth in the Judgment of Divorce after Binding Arbitration." Russell alleged that he had represented plaintiff before, during, and after the arbitration proceedings and the entry of the judgment of divorce. Russell further recited the passage from the judgment of divorce quoted above and attached copies of invoices showing the alleged unpaid balance owed. Russell alleged the existence of an attorney's lien and alleged that notice of the lien was served on all parties and their counsel as well as on holders of the parties' investment accounts. The petition requested relief in the amount of $26,291.47 and requested that payment be made "first from any and all proceeds awarded to [plaintiff] from the marital estate" including real property in Michigan and Florida as well as investment accounts.

The trial court held a hearing on Russell's motion. At the hearing, Russell variously referred to his claim for attorney fees as "an account stated," an "open account," and an "attorney's charging lien." He also referred the trial court to MCL 600.2145, which governs the proofs of the amount due on open accounts or accounts stated. Russell also requested that the amount he alleged was owed be paid first from all proceeds awarded to plaintiff from the marital estate.

Plaintiff responded that Russell was not a party to the divorce case and had failed to file a lawsuit with

proper service of process in the correct forum. Plaintiff also alleged that Russell had failed to provide a detailed billing of his charges. Plaintiff further alleged that the billing did not reflect a $2,500 credit. Finally, plaintiff stated that the billing did not state the interest rates being charged and inquired regarding how Russell had calculated the "finance charge" added to the final bill.

The trial court determined that the billing was sufficiently detailed because the entries included time spent, a description of the service, and a rate. The trial court granted Russell's request for attorney fees, although it ordered that the $2,500 credit be reflected in the judgment amount. This appeal followed.

## II. SUBJECT-MATTER JURISDICTION

Plaintiff first argues that the trial court lacked subject-matter jurisdiction over Russell's claim. We disagree. "[W]hether a trial court had subject-matter jurisdiction over a claim is a question of law that is reviewed de novo." *Harris v Vernier*, 242 Mich App 306, 309; 617 NW2d 764 (2000).

In general, "the jurisdiction of a divorce court is strictly statutory and limited to determining the rights and obligations between the husband and wife, to the exclusion of third parties . . . ." *Estes v Titus*, 481 Mich 573, 582-583; 751 NW2d 493 (2008) (quotation marks and citation omitted); see also MCL 552.6. Third parties can be joined in a divorce action only if they are alleged to have conspired with one spouse to defraud the other spouse. *Estes*, 481 Mich at 583.

Specifically, a divorce court lacks jurisdiction to adjudicate the rights of third-party creditors. *Yedinak v Yedinak*, 383 Mich 409, 414-415; 175 NW2d 706 (1970). Plaintiff argues that *Estes* and *Yedinak* indicate that the divorce court lacked jurisdiction to adjudicate the

rights of Russell, as a creditor of plaintiff. Plaintiff makes a correct general statement of the law regarding third parties to a divorce. However, Russell's claim was premised on his contractual relationship with plaintiff as her attorney and on a resulting attorney's charging lien.

There are two types of attorney's liens. A general, retaining, or possessory lien grants the attorney the right to retain possession of property of the client, including money and documents, until the fee for services is paid. *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). A special or charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Id.* The charging lien "creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Id.* Attorney charging liens are not recognized by statute but exist in the common law. *Id.* at 477.

> The [attorney's charging] lien exists as part of the court's inherent power to oversee the relationship of attorneys, as officers of the court, with their clients. It does provide a means of securing the legitimate interest of the attorney in payment for his services and expenses on behalf of the client, but it is subject to the control of the court for the protection of the client and third parties as well . . . . [*Kysor Indus Corp v DM Liquidating Co*, 11 Mich App 438, 445; 161 NW2d 452 (1968) (quotation marks and citations omitted).]

This Court has recognized a divorce court's power to enforce charging liens secured by a judgment of divorce. See *George*, 201 Mich App 474; *Munro v Munro*, 168 Mich App 138, 143; 424 NW2d 16 (1988). Thus, there is no support for plaintiff's argument that the trial court lacked jurisdiction to enforce an attorney's charging lien resulting from a divorce action.

Plaintiff further makes the cursory statement that the trial court lacked jurisdiction because the amount in controversy was less than $25,000. The jurisdiction of the trial court was established by the fact that it had jurisdiction over the divorce. The family division of the circuit court possesses exclusive jurisdiction over divorce actions. MCL 600.1021(1)(a). The ability to enforce an attorney's charging lien is ancillary to a trial court's exercise of jurisdiction over the cases before it. See *Kysor Indus*, 11 Mich App at 444-446.

Further, the amount-in-controversy requirement is based on the damages claimed. See *Szyszlo v Akowitz*, 296 Mich App 40, 51; 818 NW2d 424 (2012). Here, Russell's petition claimed that he was owed $26,291.47. The fact that Russell ultimately recovered less than $25,000 does not deprive the circuit court of jurisdiction, even assuming arguendo that the amount-in-controversy requirement applied to Russell's claim. See *Etefia v Credit Technologies, Inc*, 245 Mich App 466, 474-475; 628 NW2d 577 (2001).

We therefore find that the trial court did not lack jurisdiction over Russell's claim for attorney fees.[2]

### III. DUE PROCESS

Plaintiff next alleges that she was denied procedural due process as a result of the trial court's conducting of the hearing on Russell's claim and was further denied due process by Russell's failure to file a complaint, obtain a summons, or serve process on plaintiff before pursuing his claim. We disagree. The determination

---

[2] We note that plaintiff is correct that MCR 8.122 does not provide the trial court with jurisdiction to enforce an attorney's charging lien. See *Steinway v Bolden*, 185 Mich App 234, 237; 460 NW2d 306 (1990). However, because neither Russell nor the trial court referred to this rule, plaintiff's argument is irrelevant.

whether a party has been afforded due process of law is a question of law this Court reviews de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013).

The United States and Michigan Constitutions guarantee that no person may be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. Due-process guarantees apply to any adjudication of important rights. *Thomas v Deputy Warden, State Prison of Southern Mich*, 249 Mich App 718, 724; 644 NW2d 59 (2002). These protections apply to vested property interests. *Sherwin v State Hwy Comm'r*, 364 Mich 188, 200; 111 NW2d 56 (1961).

Generally, due process requires notice and an opportunity to be heard, including some type of hearing before deprivation of a property interest. *Dusenbery v United States*, 534 US 161, 167; 122 S Ct 694; 151 L Ed 2d 597 (2002); *Republic Bank v Genesee Co Treasurer*, 471 Mich 732, 742; 690 NW2d 917 (2005); *Brandon Twp v Tomkow*, 211 Mich App 275, 281-283; 535 NW2d 268 (1995). Additionally, due process generally requires an opportunity to be heard before an impartial decisionmaker. *Crampton v Dep't of State*, 395 Mich 347, 351; 235 NW2d 352 (1975). Notice must be reasonably calculated to apprise interested parties of the action and allow them the opportunity to present objections. *Elba Twp*, 493 Mich at 287-288. The opportunity to be heard need not encompass a full trial in all situations, but generally requires a hearing that allows a party the chance to know and respond to the evidence. *Hinky Dinky Supermarket, Inc v Dep't of Community Health*, 261 Mich App 604, 606; 683 NW2d 759 (2004).

In this case, the record reveals that plaintiff signed the judgment of divorce, which included the passage related to Russell's charging lien. Thus, plaintiff not

only had notice, but actually consented to Russell's seeking enforcement of the judgment from the trial court. The trial court was not only able, but was actually bound, to enforce the judgment. See *Franko v Olszewski*, 316 Mich 485, 491; 25 NW2d 593 (1947); *In re Draves Trust*, 298 Mich App 745, 768; 828 NW2d 83 (2012).

Additionally, the record reveals that plaintiff was properly served with Russell's petition and answered that petition. She was also served with notice of the hearing, attended the hearing, and voiced her objections to the petition. The trial court issued its decision by a written order. We hold that plaintiff received adequate due process protections. Although plaintiff argues that Russell was required to begin a separate lawsuit in a different court and serve her with a summons and complaint, this argument ignores the trial court's power to enforce attorney's charging liens. See *George*, 201 Mich App 474; *Munro*, 168 Mich App at 143.

### IV. REASONABLENESS OF ATTORNEY FEES

Plaintiff next argues that Russell's claimed attorney fees were unreasonable and inflated. We hold that the trial court did not properly review Russell's claimed fees for reasonableness. This Court reviews a trial court's award of attorney fees and costs for an abuse of discretion. See *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.*

"An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered." *Plunkett & Cooney, PC v Capitol Bancorp Ltd*, 212 Mich App 325, 329; 536 NW2d 886

(1995). An attorney is entitled to recover fees for services rendered under the agreement, even if the agreement is later terminated. *Id.* at 330. However, such fees must be reasonable.

Generally, a party requesting a postjudgment award of attorney fees must show both that the attorney fees were incurred and that they were reasonable. *McIntosh v McIntosh*, 282 Mich App 471, 483; 768 NW2d 325 (2009). "When requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services." *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005).

Russell's claim for attorney fees was premised on his contractual relationship with plaintiff as her attorney. The Michigan Rules of Professional Conduct (MRPC), which govern all attorneys in Michigan, provide:

> A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee. A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. [MRPC 1.5(a).]

Our Supreme Court has noted, although in the context of an award of attorney fees as part of case-evaluation sanctions, that trial courts have also relied on the eight factors listed in MRPC 1.5(a), which are:

> "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> "(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent." [*Smith*, 481 Mich at 530, quoting MRPC 1.5(a)(1) to (8).]

Although a trial court is not required to consider every factor in detail, the trial court should endeavor to briefly discuss the above factors "in order to aid appellate review . . . ." *Smith*, 481 Mich at 531.

A fee agreement between an attorney and a client is a contract. See *Island Lake Arbors Condo Ass'n v Meisner & Assoc, PC*, 301 Mich App 384, 392; 837 NW2d 439 (2013). In a fee dispute, the trial court should consider the language of the fee agreement to determine if the charged fees comport with the agreement. *Id.* However, the trial court, in interpreting the fee agreement and analyzing the disputed fees, should keep in mind the requirement of reasonableness as expressed in the MRPC rule and Michigan law. *Id.* ("Longstanding principles of Michigan law supply a general rule predicating the amount of [an attorney's] fee on the reasonable value of his services.").

Here, the trial court did not examine the fee agreement, if any, between Russell and plaintiff. No evidence of a written fee agreement appears in the record before this Court. Further, the trial court did not conduct a detailed inquiry into the reasonableness of the attorney fees charged by Russell. The trial court merely noted that the billing was "a very detailed billing" and that it "appears to be appropriate." The trial court further

stated that the billing was detailed because it contained an hourly rate, dates, and descriptions of the service.

The trial court also did not address on the record any of plaintiff's contentions, including plaintiff's contention that a lump sum of 67.5 hours billed by Russell was insufficiently detailed and unreasonable or that Russell impermissibly billed her separately for legal-assistant services. The trial court also did not analyze the reasonableness of the "finance charge" of over $3,000 charged by Russell. We therefore vacate the trial court's order and remand for an evidentiary hearing on the issue of the reasonableness of Russell's claimed attorney fees. On remand, the trial court should at least briefly consider the relevant factors enumerated earlier in this opinion. The trial court should also consider our following discussion of the "finance charge."

### V. "FINANCE CHARGE"

Plaintiff also argues that the "finance charge" added by Russell resulted from a usurious interest rate in violation of both state and federal law. Plaintiff's claims under the Truth in Lending Act, 15 USC 1601 *et seq.* (TILA), and Regulation Z of the Board of Governors of the Federal Reserve System, 12 CFR 226 *et seq.* (Reg Z), are utterly meritless. However, this Court lacks sufficient information to determine whether the "finance charge" is interest on a debt or a late fee, and thus cannot determine if the charge is in violation of MCL 438.31. The issue whether state or federal usury laws apply to Russell's claimed attorney fees is an issue of statutory interpretation, which this Court reviews de novo. *Elba Twp*, 493 Mich at 278.

With regard to plaintiff's claims under the TILA, Russell plainly is not a "creditor" who is subject to federal disclosure requirements. See 15 USC 1602(g),

15 USC 1631(b), 15 USC 1632(a), and 12 CFR 226.2(a)(17). Even cursory research into the statutory definition of this term and the applicability of the federal statutory scheme would have revealed that these laws, designed for the protection of consumers in consumer-credit transactions, do not apply to the instant case. Plaintiff's argument is utterly without merit.

Plaintiff also alleges that the finance charge charged by Russell violates Michigan's usury law, MCL 438.31. This statute provides for a rate of 5% yearly interest, except that parties may stipulate a larger amount of interest, not to exceed 7%. This statute applies to interest charged on a debt arising from the sale of goods or services. *Attorney General v Contract Purchase Corp*, 327 Mich 636, 642-643; 42 NW2d 768 (1950). However, "late payment charges ordinarily do not constitute interest." *Barbour v Handlos Real Estate & Bldg Corp*, 152 Mich App 174, 188; 393 NW2d 581 (1986).

It is not clear to this Court whether Russell's claimed "finance charge" is a late fee or interest owed on a debt. The invoices provided show regular payments and credits, with no finance charges, until June 10, 2010, at which point the invoices show a stated balance of $23,068.75. Five months later, on November 23, 2010, a "finance charge" of $686.02 was charged—approximately 3% of the total balance. No further charges were made until March 9, 2012, almost 16 months after the last charge, at which point a finance charge of $2,536.70 was charged on a balance of $23,754.77, approximately 11% of the total balance. The inference could be made that the "finance charge" was roughly 3% every four months; however the haphazard timing of the charges, combined with a small number of data points, makes this a shaky conclusion at best.

Additionally, at no point did the invoices show any amounts in the "1-30 Days Past Due," "31-60 Days Past Due," "61-90 Days Past Due," or "Over 90 Days Past Due" columns of the invoices.

Interest is "a charge for the loan or forbearance of money." *Balch v Detroit Trust Co*, 312 Mich 146, 152; 20 NW2d 138 (1945) (quotation marks and citation omitted). On the other hand, late fees are similar to liquidated damages, in that they are contractual obligations designed to cover expenses engendered by a breach of contract. See *E F Solomon v Dep't of State Hwys & Transp*, 131 Mich App 479, 483-484; 345 NW2d 717 (1984), see also *Nat'l Can Co v Fellows*, 290 F 201, 202 (CA 6, 1923) ("Where a contract does not call for compensation for the use of money, but only exacts a payment, which the promisor may wholly avoid by keeping his contract, such stipulated payment is not interest, but is in the nature of a penalty, valid if within the proper limits of liquidated damages . . . .").

This Court simply lacks sufficient information, such as evidence of the billing arrangement between Russell and plaintiff, to determine if the finance charge is in the nature of interest on a debt (which, at the calculated rate, may be usurious under MCL 438.31), or a permissible late fee. The trial court should consider this issue on remand, should Russell still seek payment of this "finance charge."

### VI. ATTACHMENT OF RUSSELL'S CHARGING LIEN TO PLAINTIFF'S REAL PROPERTY

Next, plaintiff argues that the trial court erred by ordering that attorney fees be paid from assets and accounts specified by Russell. Although it does not appear that the trial court ordered payment of Russell's fees through a lien on plaintiff's real property, we

remind the trial court that, under the existing circumstances, it should not attach an attorney's charging lien to plaintiff's real property. However, the trial court possessed the authority to order the charging lien be paid out of other assets obtained from the divorce.

Plaintiff mischaracterizes the trial court's order as requiring that the payment to Russell be made from "assets or financial accounts specified by Russell." In fact, the order merely states that the judgment *may* be satisfied from assets of the divorce:

> Petitioner A. Lawrence Russell is awarded the sum of twenty three thousand, seven hundred ninety one ($23,971.00[3]) and zero cents in jugement [sic] against Gwenda Souden. Judgment is subject but not limited to all marital property, Ameriprise accounts, John Henry annuity, real property located in Michigan and in Florida and all spousal support as ordered herein.

Thus, although plaintiff claims that the trial court in effect ordered her to liquidate certain assets, regardless of taxation or other consequences, to pay Russell's bill, the order does not support such a claim. The order merely states that the judgment is "subject" to various proceeds of the divorce. As stated already, the trial court does possess the power to order that the fees and costs due for services be secured out of the judgment or recovery in a particular suit. *George*, 201 Mich App at 476. We find no error in the trial court's order with respect to any property other than real property.

However, with regard to real property, this Court has stated generally that "[n]o Michigan authority . . . permits an attorney's charging lien to attach to real property." *Id.* at 477-478. Moreover, "[a] judgment, by itself, does not create a lien against a debtor's property."

---

[3] See Part VII of this opinion.

*Id.* at 477. In *George*, this Court concluded that no attorney's charging lien may be imposed on a client's real estate, even if title to the real estate was established or recovered by the attorney's efforts, unless "(1) the parties have an express agreement providing for a lien, (2) the attorney obtains a judgment for the fees and follows the proper procedure for enforcing a judgment, or (3) special equitable circumstances exist to warrant imposition of a lien." *Id.* at 478.

Here, the express agreement (as set forth in the stipulated divorce judgment) providing for the lien does not provide that the lien will be paid out of real property, but only that each attorney retains "a lien on his/her client's share of the marital assets . . . ." This does not constitute an express agreement that the lien may attach to real property. Even if the divorce judgment generally constitutes an "express agreement providing for a lien," *George* instructs that "attorney liens upon real property" are disallowed absent "an express written contract . . . *providing for such a lien* . . . ." *Id.* at 478 (emphasis added). The divorce judgment in this case does not satisfy that test. Additionally, in order to proceed against a debtor's real property under the second prong of *George*'s analysis, a creditor must obtain a judgment and execute it against the debtor's property; furthermore:

> A creditor may execute against real property owned by a debtor only after attempting to execute against the debtor's personalty and determining that the personal property is insufficient to meet the judgment amount. MCL 600.6004; MSA 27A.6004. To place a lien against a debtor's real property, the creditor must deliver the writ of execution and a notice of levy against the property to the sheriff, who then records the notice of levy with the register of deeds to perfect the lien. [*Id.* at 477.]

Here, Russell has obtained a judgment; however he has not attempted to execute on that judgment or determined that plaintiff's personalty is insufficient to satisfy the amount. No evidence exists that plaintiff has attempted to avoid paying for Russell's services; instead, as in *George*, a current dispute exists about the total fee charged by Russell. *Id.* at 479.[4]

Thus, to the extent that the order of the trial court can be interpreted as attaching a lien to the real property of plaintiff, such a lien would be invalid under the circumstances as they currently exist. On remand, the trial court should be cognizant that, absent Russell's following the proper procedures to collect on a judgment, his charging lien may not attach to plaintiff's real property.

### VII. OTHER ISSUES

Because we vacate the trial court's order and remand for an evidentiary hearing, we need not address plaintiff's other issues. We note briefly, for plaintiff's edification and in an effort to reduce the number of issues on any subsequent appeal, that there is no evidence that the trial court viewed Russell's claim as one on an account stated; furthermore, Russell's claim cannot be maintained under MCL 600.2145. See *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d 244 (2013); see also *Seyburn, Kahn, Ginn, Bess, Deitch & Serlin, PC v Bakshi*, 483 Mich 345, 357-358; 771 NW2d 411 (2009). Further, if a handwritten judgment contains a simple numerical transposition error, plaintiff may simply ask either the trial court, pursuant to MCR 2.612(A)(1), or this Court, pursuant to

---

[4] Additionally, no special equitable circumstance exists warranting the imposition of a lien on real property.

MCR 7.216(A)(1), to correct the error; invective and hyperbole are not necessary. Additionally, we decline to address plaintiff's claims regarding the dischargeability of this debt in bankruptcy as unripe. *LaFontaine Saline Inc v Chrysler Group LLC*, 298 Mich App 576, 589-591; 828 NW2d 446 (2012), lv granted 495 Mich 870 (2013).

For the foregoing reasons, we vacate the trial court's order and remand for an evidentiary hearing. We deny plaintiff's request to have this matter heard before a different trial judge, because we find that plaintiff has utterly failed to establish the necessary prerequisites to overcome the presumption of judicial impartiality. *In re Forfeiture of $1,159,420*, 194 Mich App 134, 151; 486 NW2d 326 (1992).

Vacated and remanded. We do not retain jurisdiction.

DONOFRIO and BECKERING, JJ., concurred with BOONSTRA, P.J.