# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF ZAKI JAMEEL TAMS, by
DARREN FINDLING, Personal Representative,

     Plaintiff-Appellee,

and

COCHRAN, FOLEY & ASSOCIATES, PC,

     Appellee,

v

AUTO CLUB INSURANCE ASSOCIATION,
doing business as AAA MICHIGAN,

     Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 332558
Wayne Circuit Court
LC No. 14-015065-NF

---

Before: MURRAY, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Zaki Tams sustained serious injuries when an uninsured motor vehicle struck his motorcycle. He retained the law firm of Cochran, Foley & Associates to represent him in "a claim for injury" arising from the accident.

As an employee of the MGM Casino, Tams was a beneficiary of its self-funded ERISA plan. On that Plan's behalf the Health Alliance Plan (HAP) paid all of Tams' medical expenses. Eventually, Tams' no-fault insurer, defendant Auto Club Insurance Association, fully reimbursed HAP. Despite that Tams never received a medical bill or went without medical care, Cochran asserted an attorney lien on HAP's reimbursement proceeds. Over the Auto Club's objection, the trial court granted summary disposition in favor of Cochran. Because no evidence supports that legal services provided by Cochran brought about HAP's reimbursement, we vacate the court's order and remand for entry of an order of partial summary disposition in favor of Auto Club.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Tams' motorcycle accident occurred on July 12, 2014. He retained Cochran three days later. In addition to pledging to pursue Tams' damages claim, Cochran promised to "process" a

- 1 -

claim for no-fault benefits. Tams agreed to pay the law firm for this service according to a sliding contingency-fee scale. "If the benefits are non-contested," a rider to the representation contract provided, "the attorney shall receive ten (10%) of the recovery after deducting costs[.]"

Unfortunately, Tams sustained severe injuries in the accident, including an amputation below the knee.[1] Luckily, all of his medical expenses were automatically covered by HAP, his health insurer under MGM's ERISA plan. Approximately one month after the accident, Cochran advised Tams' no-fault insurer, defendant Auto Club, that it represented Tams in relation to "outstanding no-fault benefits." Shortly thereafter, Cochran filed a first-party no-fault action against Auto Club on Tams' behalf, seeking unpaid and overdue personal injury protection benefits. Subsequently, Cochran filed an amended complaint naming the driver and owner of the vehicle that hit Tams as additional defendants. The amended complaint also asserted a claim against Auto Club for "uninsured/underinsured" coverage.

Discovery confirmed that HAP had paid all of Tams' medical bills. On March 5, 2015, Cochran sent a letter to HAP, advising of its representation and that HAP "may be entitled to seek reimbursement from any recovery" obtained. Cochran requested that HAP provide a payment summary and a copy of Tams' health insurance policy. Less than two weeks later, an entity called The First Recovery Group contacted the Auto Club adjuster assigned to Tams' file and demanded that Auto Club reimburse HAP for Tams' medical expenses. Contemporaneously, First Recovery notified Cochran that it had been retained to pursue HAP's "right of subrogation and/or recovery regarding medical claims paid" on Tams' behalf. First Recovery's letter provided that HAP had paid more than $200,000 in medical bills, and that his medical care was on-going.

In September 2015, Auto Club fully reimbursed HAP for the medical benefits HAP had paid for the medical treatment of Tams' accident-related injuries. No evidence supports that Cochran played any role in this process. In fact, Tams' HAP certificate (provided to Cochran in October 2015) stated that HAP would not reimburse a beneficiary for attorney fees and costs incurred in recovering against another party, and specifically warned, "You do not have the right to engage legal counsel or to act on Our behalf or Your Group Health Plan's behalf without Our agreement, as evidenced in writing by Us in a signed, duly authorized agreement."

Shortly after receiving Auto Club's payment, First Recovery informed Cochran that it had recovered 100% of its lien and closed its file. Four weeks later, Cochran sent Auto Club a letter demanding payment of an attorney lien in the amount of $68,911.32, one-third of the amount Auto Club paid to reimburse HAP.

Auto Club sought partial summary disposition regarding Cochran's entitlement to a lien. Auto Club argued that (1) it had no notice of Cochran's claimed lien, (2) First Recovery never retained Cochran to assist in its reimbursement efforts, and (3) Auto Club's reimbursement of HAP was voluntary and not the result of any effort by Cochran. The trial court denied Auto Club's motion, concluding that Auto Club had notice of Cochran's lien and had "acquiesce[ed] in Cochran's legal efforts to recover the money due the Plan." The court entered a judgment

---

[1] Tams died in November 2016, and his estate was substituted as a party.

against Auto Club and in favor of Cochran for $68,911.32. We granted Auto Club's delayed application for leave to appeal.

II. ANALYSIS

The issue presented in this case is whether Cochran is entitled to claim an attorney lien on the reimbursement Auto Club paid to HAP. "Whether a lien is authorized in a particular case is a question of law," which we review de novo. *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 281; 761 NW2d 761 (2008).

Michigan adheres to the "American Rule" regarding attorney fees, which provides that "attorney fees are not ordinarily recoverable unless a statute, court rule, or common-law exception provides to the contrary." *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 474; 521 NW2d 831 (1994). Auto Club insists that no such exception obtains in this case. Cochran argues that it is entitled to assert a common-law charging lien.

A charging lien is "an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit." *Souden v Souden*, 303 Mich App 406, 411; 844 NW2d 151 (2013) (quotation marks and citation omitted). Charging liens may be placed on "a judgment, settlement, or other money recovered as a result of the attorney's services." *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2d 583 (1993). When there is neither a judgment nor an express agreement for the imposition of a lien, "special equitable circumstances" must exist to warrant the imposition of an attorney's charging lien. *Id*. at 478. Among those "special equitable circumstances" is a direct relationship between the attorney's services and the amount recovered. "An attorney's lien is not an assignment but is a specific encumbrance on a fund or judgment which the client has recovered *through the professional services of the attorney*." *Aetna Cas & Surety Co v Starkey*, 116 Mich App 640, 645; 323 NW2d 325 (1982) (emphasis added).

No such equitable circumstances exist in this case. With regard to Tams' medical expenses, Cochran has presented no evidence it performed any legal work that benefitted Tams. Tams never *incurred* any medical expenses, and therefore never faced any legal jeopardy. As the Supreme Court explained in *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484; 673 NW2d 739 (2003), a no-fault claimant "incurs" an expense when he or she becomes "liable" for the cost. "An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services." *Id*. at 484 n 4. Tams never paid a medical bill or even received one. To the contrary, Auto Club reimbursed HAP voluntarily and without contesting its responsibility to do so. Although Auto Club apparently delayed paying Tams other no-fault benefits, Cochran has neither alleged nor supported a claim that Auto Club refused or delayed in paying medical benefits owed to Tams or, for that matter to HAP. Rather, Auto Club and HAP resolved their dispute without Cochran's help, and without involving Tams.

To be entitled to a charging lien, an attorney must demonstrate that some action by the attorney yielded the recovery to be charged. After all, "[t]he rationale for permitting attorneys to assert a charging lien is the promotion of justice and equity." *DiLoreto v Tiber Holding Corp*, 804 A2d 1055, 1056 (Del, 2001). Charging liens compensate attorneys for legal work that would

otherwise remain unremunerated. Cochran has not presented any evidence that *its* efforts benefitted either Tams or HAP.

We vacate the judgment in favor of Cochran and remand for entry of an order of partial summary disposition in favor of Auto Club. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher