*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CIERA SHANTELL PHILLIPS,

        Plaintiff-Appellant,

v

DEANTEZ JOHNSON,

        Defendant-Appellee.

UNPUBLISHED
April 06, 2026
2:19 PM

No. 372863
Wayne Circuit Court
LC No. 24-105054-DC

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Plaintiff, Ciera Shantell Phillips, appeals as of right the trial court's order denying her motion for parenting time with the minor child. Finding no error, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The minor child, DJ, was born in 2014. The parties signed an affidavit of parentage establishing defendant, Deantez Johnson, as the father. Plaintiff initially considered adoption, but decided against it when defendant offered to raise DJ with his wife, Mrs. Johnson. On October 24, 2014, the parties entered into an agreement regarding custody, parenting time, and child support ("the agreement"). The parties agreed defendant was to have sole legal and physical custody of DJ, and plaintiff was not given parenting time. The agreement also provided defendant was solely responsible for DJ's financial support, and plaintiff was not required to pay child support. The parties abided by this agreement for nine years.

DJ resided with defendant and Mrs. Johnson since birth, and believed that Mrs. Johnson was his biological mother. But in 2024, plaintiff learned that defendant was incarcerated, and on May 2, 2024, plaintiff filed a complaint for custody, parenting time, and child support. The same day, plaintiff moved ex parte for emergency custody of the child, alleging defendant was incarcerated and Mrs. Johnson was not allowing her to see DJ. Defendant was released from prison in July of that year. Defendant answered the complaint, contending DJ had been in his sole custody since birth, plaintiff "signed away" her custodial rights, she has never had parenting time, and it was in DJ's best interests for defendant to have sole custody because plaintiff did not want to be a part of DJ's life until now. The trial court scheduled an evidentiary hearing on plaintiff's

-1-

complaint. The trial court entered an interim order prohibiting plaintiff from having contact with DJ pending the outcome of the evidentiary hearing.

At the evidentiary hearing, plaintiff testified she did not read the parties' agreement before signing it, and argued it was never supposed to grant defendant sole custody. Rather, by signing the affidavit of parentage, plaintiff believed she had custodial rights to DJ. Plaintiff nevertheless recognized the agreement was made to allow defendant to raise DJ, and admitted she signed it voluntarily. Plaintiff has only spoken to defendant once or twice since DJ was born. Plaintiff asserted that she had been trying to file a motion for parenting time since DJ was born, but every time she tried, the Friend of the Court said there was nothing they could do. Plaintiff acknowledged the Johnsons love DJ and they provide a custodial environment for him. Plaintiff agreed she did not want to disrupt DJ's custodial environment, and that it would be very traumatic for DJ to find out that Mrs. Johnson is not his biological mother. Finally, plaintiff clarified that she was not seeking custody of DJ, only parenting time.

Defendant testified he watched plaintiff read the custody agreement before signing it and recalled discussing the agreement with her before signing it. Defendant testified that he signed the agreement intending to raise DJ on his own. Defendant has raised DJ since birth with his wife, and opposed plaintiff having any parenting time. Mrs. Johnson testified that she and defendant have been married for ten years, she considers DJ to be her child, and they live in a happy home together in Wixom, MI.

Plaintiff testified that she gave Mrs. Johnson money in the past. Mrs. Johnson denied receiving money from plaintiff, and testified that she gave money to plaintiff in the past, including $5,000 when plaintiff's boyfriend threatened to "take that baby back[,]"referring to DJ. Plaintiff denied receiving any money from Mrs. Johnson. Defendant admitted he asked plaintiff for money when he was incarcerated.

The trial court addressed the best interest factors under MCL 722.23. The trial court found that Factor (a), the love, affection, and other emotional ties between the parties and child, favored defendant because he clearly loves DJ and is more emotionally tied to him as a parent than plaintiff. Regarding Factor (b), the capacity and disposition of the parties to give the child love, affection and guidance to continue the education and raising of the child, the trial court found this factor favored defendant because he makes sure DJ does well in school and participates in his extracurricular activities. As to factor (c), the capacity of the parties to provide food, clothing, and medical care, the trial court found this favored defendant because he provided necessities for DJ throughout his entire life. The trial court found Factor (d), the length of time the child has lived in a stable environment, favored defendant because DJ has lived with him in a stable environment his entire life, and DJ recognized the Johnsons "as his parents for more than nine years." Under Factor (e), the permanence, as a family unit, of the existing or proposed custodial homes, the trial court found that defendant and his wife "provided every indicia of permanence to DJ." The trial court stated, "Even when [defendant] was incarcerated, Ms. Johnson continued to provide the home environment which DJ knew." The trial court found the permanence of plaintiff's family unit "does not match that of the Johnsons" for DJ.

As to moral fitness under Factor (f), the trial court deemed the factor was neutral. The trial court found Factor (g), the mental and physical health of the parties, was also neutral because the

parties both "enjoy good mental and physical health." The trial court found Factor (h), the home, school, and community record of the child, favored defendant because DJ was thriving and excelling in school and sports with defendant's support. Regarding the child's "reasonable preference" under Factor (i), the trial court acknowledged DJ was nine years old, which it considered "old enough to state a reasonable preference." The trial court interviewed DJ and indicated it considered his preference. Addressing Factor (j), the willingness and ability of the parties to facilitate a close relationship between the child and the other parent, the trial court found this factor was not relevant because plaintiff "relinquished any custodial or parenting time relationship she had with DJ," and defendant is not obligated "to encourage any relationship" between DJ and plaintiff. The trial court concluded, "These factors taken as a whole demonstrate, not despite a preponderance of the evidence, but, plainly by clear and convincing evidence that it is in DJ's best interests to remain in the custody of Mr. and Mrs. Johnson."

The trial court's order stated defendant "shall have sole legal and sole physical custody of the child until the child reaches the age of 18 or further order of the court." The trial court denied plaintiff's motion for parenting time under MCL 722.27a(3). Plaintiff now appeals.

## II. ANALYSIS

Plaintiff makes three arguments on appeal: (1) plaintiff's due process rights were violated when she was not allowed to present an opening statement, was immediately subjected to cross-examination, and was not allowed to cross-examine a witness herself, (2) the agreement she signed after DJ's birth is void as against public policy because it gives up plaintiff's rights to DJ in exchange for foregoing child support, and (3) the trial court erred in denying her parenting time.

## A. PROCEDURAL DUE PROCESS

Plaintiff contends the trial court denied her due process in immediately subjecting her to cross-examination by defendant's counsel, not affording her the opportunity to present an opening statement, and not allowing her to cross-examine an adverse witness, which deprived her of a fair trial. We disagree.

Whether a party's right to due process was violated is a constitutional question that this Court reviews de novo. *CAJ v KDT*, 339 Mich App 459, 464; 984 NW2d 504 (2021). Unpreserved issues are reviewed for plain error affecting substantial rights. *Id*. "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (citation and quotation marks omitted).

The United States and Michigan Constitutions guarantee that no person may be deprived of life, liberty, or property without due process of law. US Const, Am V; US Const, Am XIV; Const 1963, art 1, § 17. Parents have a significant liberty interest in the care and custody of their children that is protected by due process. *In re Beck*, 287 Mich App 400, 401; 788 NW2d 697 (2010). Procedural due process requires notice and an opportunity to be heard, "including some type of hearing[.]" *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013). "The opportunity to be heard need not encompass a full trial in all situations, but generally requires a hearing that allows a party the chance to know and respond to the evidence." *Id*.

Trial courts have the express authority to direct and control the proceedings before them to achieve the "orderly and expeditious disposition of cases." *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006). The scope and duration of cross-examination is in the trial court's sound discretion, and this Court will not reverse absent an abuse of discretion. *Wischmeyer v Schanz*, 449 Mich 469, 474-475; 536 NW2d 760 (1995). This Court "review[s] for an abuse of discretion a trial court's general conduct of a trial." *Zaremba Equip, Inc v Harco Nat'l Inc Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*.

Plaintiff did not raise her due process argument below, so this Court's review is for plain error affecting substantial rights. *CAJ*, 339 Mich App at 464. At the evidentiary hearing, plaintiff proceeded in pro per, and defendant was represented by counsel. Plaintiff asserts that she was not allowed to present an opening statement, even though the hearing was on her complaint for custody and parenting time, but defense counsel was allowed to make an opening statement. The relevant part of the evidentiary hearing transcript provides as follows:

> *Defendant's Counsel*: May I make an opening, your Honor, a brief opening?
>
> *The Court*: You may make a brief opening.
>
> *Defendant's Counsel*: Brief opening.
>
> *The Court*: I've read your trial brief several times.
>
> *Defendant's Counsel*: Yes
>
> *Thel Court*: I recall this case. I know the facts of this case.
>
> *Defendant's Counsel*: Okay.
>
> *The Court*: A brief opening.
>
> *Defendant's Counsel*: And it'll be three sentences. Your Honor, this is a situation in which [defendant] and Mrs. Johnson have an established custodial environment for the life of this child.
>
> *The Court*: I agree.
>
> *Defendant's Counsel*: And the standard changes for [plaintiff] from this point and that's it. That's my opening.
>
> *The Court*: I agree.
>
> *Defendant's Counsel*: All right. May I?
>
> *The Court*: You may?
>
> *Defendant's Counsel*: If I get some direction from the court. I'm assuming you don't want me to pursue this like the deposition transcript that I did where I've

-4-

asked a lot of other things that might—I will try to sanitize it and deal with just the points.

*The Court*: So, the only thing I'm concerned with here is. . . .

*Plaintiff*: May I say something?

*The Court*: Excuse me. No. Not at this point. You'll get a chance to say something, but, again, I only take testimony.

*Plaintiff*: Okay.

As this excerpt shows, defense counsel asked to make an opening statement, but the trial court was reluctant to allow it because she knew the facts of the case and read defense counsel's trial brief. The trial court allowed defense counsel to make a three-sentence opening statement. However, when plaintiff asked to say something, the trial court said no, but assured she would get an opportunity later on. Opening statements are usually reserved for trials. See MCR 2.507(A) and MCR 2.513(C) (discussing opening statements in the context of bench trials and jury trials). This evidentiary hearing on plaintiff's complaint for custody and parenting time did not amount to a trial, so an opening statement was not necessarily required. And it is clear the trial court did not plan on having the parties make opening statements, but allowed defense counsel to make a very brief statement on request.

When read as a whole, the record shows that plaintiff was afforded the opportunity to speak later on, and was able to present witnesses and evidence to support her complaint, consistent with procedural due process. See *Souden*, 303 Mich App at 413. After the cross-examination by defense counsel, the trial court asked plaintiff if there were any other facts that she wanted the court to know. Plaintiff took this opportunity to explain that she had been attempting to file a motion regarding DJ for nine years. Plaintiff also presented her boyfriend as a witness to corroborate her own testimony. Therefore, the trial court comported with procedural due process by giving plaintiff an opportunity to be heard. Further, it is within the trial court's sound discretion to control the court proceedings. See *Maldonado*, 476 Mich at 376. The trial court did not abuse its discretion by forgoing an opening statement from plaintiff. See *Zaremba Equip, Inc*, 302 Mich App at 21.

Plaintiff also contends that the trial court violated her due process rights by immediately subjecting her to cross-examination by defense counsel, instead of allowing plaintiff to present her evidence first. With her motion for custody and parenting time, plaintiff also filed a motion to revoke the affidavit of parentage. Plaintiff claimed that she was under duress when she signed the affidavit of parentage. The trial court thus directed the parties at the outset of the evidentiary hearing to focus on the duress issue first, before getting into custody and parenting time. Because the duress claim largely depended on plaintiff's own testimony, it made sense for the trial court to have defense counsel cross-examine plaintiff regarding her claim of duress first. Again, the order of the presentation of evidence is within the trial court's discretion in directing the court proceedings. See *Maldonado*, 476 Mich at 376. Having plaintiff testify first regarding her duress claim was not outside the range of principled outcomes under these circumstances. See *Zaremba Equip, Inc*, 302 Mich App at 21. The trial court did not abuse its discretion.

Lastly, plaintiff argues that her due process rights were violated when she was not allowed to cross-examine Mrs. Johnson. After defense counsel finished direct examination of Mrs. Johnson, plaintiff asserted that she had questions to ask. Plaintiff had the following exchange with the trial judge:

*Plaintiff:* Yes. I have questions for Ms. Johnson.

*The Court:* What are they? I'm not sure I'm going to allow them. We need to get this finished at this point.

*Plaintiff:* It's pertaining to everything she just testified to.

*The Court:* What are your questions?

*Plaintiff:* Never mind. Go ahead.

The trial court then asked defense counsel to call the next witness.

The record shows that the trial court allowed plaintiff to cross-examine Mrs. Johnson, but plaintiff declined to ask any questions. While the trial court was hesitant to allow the questions, plaintiff was then afforded the opportunity to pose questions to Mrs. Johnson on cross-examination. We note that wanting to "get this finished" is not a valid reason for the trial court to deny cross-examination. But it is clear here that the trial court did allow plaintiff to pose questions after its initial hesitation, and plaintiff said "never mind." Plaintiff cannot argue that she was deprived of the opportunity to cross-examine Mrs. Johnson when she declined to ask questions.

Over all, the trial court afforded plaintiff an opportunity to be heard during the evidentiary hearing, and therefore the trial court did not violate plaintiff's procedural due process rights. See *Souden*, 303 Mich App at 413.

## B. CUSTODY AGREEMENT

Plaintiff next argues the trial court erred in holding the parties' custody agreement against her because it is patently void as against public policy. We disagree.

Plaintiff did not raise this issue in the trial court, so our review is for plain error affecting substantial rights. *CAJ*, 339 Mich App at 464. Plaintiff argues the agreement gave all rights to DJ to defendant in exchange for defendant not seeking child support from plaintiff, which is void under Michigan law. Children have the right to receive financial support from their parents. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007). "It is a well-established principle in Michigan that parties cannot bargain away their children's right to support." *Laffin v Laffin*, 280 Mich App 513, 518; 760 NW2d 738 (2008). "Consequently, an agreement by the parties regarding support will not suspend the authority of the court to enter a support order." *Id*. (quotation marks and citation omitted).

Here, the parties' agreement provided that defendant "shall be solely responsible for the financial support of the minor child. [Plaintiff] shall not be required to pay child support." The agreement further granted defendant sole physical and sole legal custody of DJ, and stated plaintiff

"shall not be entitled to parenting time." Plaintiff now argues that this agreement is void as against public policy because it "gave all rights to the child" to defendant "in exchange for defendant not seeking support from plaintiff." Therefore, plaintiff argues the trial court erred in upholding the agreement. This argument is without merit.

The trial court did not deny plaintiff parenting time based upon the agreement, or otherwise enforce the agreement against plaintiff. The trial court properly considered the complaint for parenting time as an original action under the Child Custody Act, MCL 722.21 *et seq.*, and the trial court properly denied parenting time after consideration of the best interest factors, as will be discussed in the next section. Thus, even if this Court found the agreement to be void, the trial court's order is now the controlling authority for the child support, parenting time, and custody of DJ, so the agreement is moot. See *TM v MZ*, 501 Mich 312, 317; 916 NW2d 473 (2018) ("A moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights.")

Moreover, the agreement is not void as against public policy. Under the parenting time statute, parents can agree on parenting time terms. MCL 722.27a provides, "If the parents of a child agree on parenting time terms, the court shall order the parenting time terms unless the court determines on the record by clear and convincing evidence that the parenting time terms are not in the best interests of the child." And "an agreement by the parties regarding support will not suspend the authority of the court to enter a support order." *Laffin*, 280 Mich App at 51. The parties here agreed that plaintiff would not have parenting time and would also not be responsible for paying any child support. This is a valid agreement unless the trial court determines it is not in the best interests of DJ.

## C. PARENTING TIME

Plaintiff argues the trial court erred by denying her request for parenting time because the trial court did not find that that parenting time would endanger the child's physical, mental, or emotional health. Plaintiff asserts the trial court de facto terminated her parental rights. We disagree.

> We apply three standards of review in custody cases. The great weight of the evidence standard applies to all findings of fact. A trial court's findings regarding the existence of an established custodial environment and regarding each custody factor should be affirmed unless the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. Questions of law are reviewed for clear legal error. A trial court commits clear legal error when it incorrectly chooses, interprets, or applies the law. [*Stoudemire v Thomas*, 344 Mich App 34, 42; 999 NW2d 43 (2002) (quotation marks and citation omitted).]

"Orders concerning parenting time must be affirmed on appeal unless the trial court's findings were against the great weight of the evidence, the court committed a palpable abuse of discretion, or the court made a clear legal error on a major issue." *Id*. at 42-43 (citation and quotation marks omitted). "In child custody cases, [a]n abuse of discretion exists when the trial court's decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Stoudemire*, 344 Mich App at 43 (quotation marks

and citation omitted). This Court reviews de novo the interpretation and application of statutes. *Yachcik v Yachcik*, 319 Mich App 24, 32; 900 NW2d 113 (2017).

The child's best interests govern a court's decision regarding parenting time. *Shade v Wright*, 291 Mich App 17, 31; 805 NW2d 1 (2010). MCL 722.27a states in relevant part:

> (1) Parenting time shall be granted in accordance with the best interests of the child. It is presumed to be in the best interests of a child for the child to have a strong relationship with both of his or her parents. Except as otherwise provided in this section, parenting time shall be granted to a parent in a frequency, duration, and type reasonably calculated to promote a strong relationship between the child and the parent granted parenting time.

***

> (3) A child has a right to parenting time with a parent unless it is shown on the record by clear and convincing evidence that it would endanger the child's physical, mental, or emotional health.

In considering a motion for parenting time, a court must first consider the child's established custodial environment. *Barretta v Zhitkov*, 348 Mich App 539, 552; 19 NW3d 420 (2023). "An established custodial environment is one in which over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." *Id.*, citing MCL 722.27(1)(c) (internal quotation marks omitted). Whether the child has an established custodial environment is a factual inquiry. *Id.*

The established custodial environment determines the applicable standard of proof for a change in parenting time. *Id.* If the proposed change in parenting time would not alter the child's established custodial environment, the movant is required to prove by a preponderance of the evidence that the change is in the best interests of the child. *Id.* at 552-553, citing *Stoudemire*, 344 Mich App at 44. But if the proposed change would alter the established custodial environment, the movant must prove it is in the child's best interests under the higher clear-and-convincing-evidence standard. *Id.*, citing *Stoudemire*, 344 Mich App at 44.

Here, the trial court first found that DJ's established custodial environment existed solely with defendant. *Barretta*, 348 Mich App at 52. DJ had only known a life and home with defendant, and did not know plaintiff as his mother. Plaintiff clarified during the evidentiary hearing that she was not seeking custody, nor seeking to disrupt DJ's established custodial environment, and that she was only seeking parenting time. The trial court consulted the best interest factors pursuant to MCL 722.27a(1) and determined that it was not in DJ's best interests to have parenting time with plaintiff. The evidence presented at the hearing supported this finding.

Plaintiff asserts the trial court erred because it did not find that parenting time with plaintiff would endanger DJ's physical, mental, or emotional health. This argument is without merit. While the trial court did not explicitly state that parenting time with plaintiff would endanger DJ's physical, mental, or emotional health in its oral ruling, the trial court cited to the subsection of the statute in its written order, indicating that it found parenting time would endanger DJ's physical, mental, or emotional health. The trial court also expressed during the evidentiary hearing that it

believed it would be "traumatic" for DJ to learn that plaintiff was his mother because she was never a part of his life. And plaintiff agreed that it would be very traumatic for DJ to learn that someone other than Mrs. Johnson was his biological mother. There was no indication in the testimony that DJ would be physically harmed if plaintiff were to have parenting time, but the trial court's reference to "trauma" indicates that it found DJ would be mentally or emotionally harmed if plaintiff were granted parenting time. Moreover, it is the best interests of the child that govern parenting time decisions. *Shade*, 291 Mich App at 31. The trial court found by clear and convincing evidence that the best interest factors overwhelmingly favored defendant, and that it was not in DJ's best interests to have parenting time with plaintiff. Plaintiff has not shown that the trial court's factual findings were against the great weight of the evidence, nor shown that the trial court abused its discretion or committed an error of law. See *Stoudemire*, 344 Mich App at 42-43. Therefore, we affirm the trial court's order denying parenting time.

Plaintiff's argument that the trial court's order denying parenting time de facto terminated her parental rights is also without merit. Plaintiff is not forbidden from seeking parenting time in the future. Under MCL 722.27(1)(c), the trial court can modify or amend its order for proper cause shown or because of a change of circumstances until the child reaches the age of 18. If plaintiff can show proper cause or a change in circumstances, she can petition the trial court for parenting time.

## III. CONCLUSION

The agreement was not void on the basis it violated public policy. Plaintiff did not demonstrate plain error affecting her substantial rights or that she was denied her right to due process or deprived of a fair trial. The trial court did not err by denying plaintiff's request for parenting time.

Affirmed.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-9-